INTERSTATE LIFE & ACCIDENT CO. *v.* WATERS.

Feb. 4, 1952.

No. 38226 (56 So. (2d) 493)

Lipscomb & Ray, for appellant.

Barnett, Jones & Montgomery, for appellee.

Kyle, J.

This is an appeal by the Interstate Life and Accident Company, defendant in the court below, from a judgment rendered by the circuit court of the First Judicial District of Hinds County in favor of Charlie Lee Waters, plaintiff, for the sum of $1,000. The action was brought by the plaintiff against the defendant on two accident insurance policies issued by the defendant to the plaintiff during the month of January 1947. The case was tried before a jury, and the jury under the instructions of the court returned a verdict for the plaintiff.

The facts are undisputed and are substantially as follows: On or about October 29, 1949, the appellee, Charlie Lee Waters, after visiting some friends on the Pocahontas Road north of Jackson, in company with an elderly woman and her daughter, was walking north-wardly along the left side of the Pocahontas Road several feet from the pavement, when an automobile proceeding northwardly along the highway apparently got out of the control of the driver and struck the three pedestrians with such force that the woman was killed and her

daughter and the appellee were seriously injured. The automobile continued northwardly along the highway without stopping.

The appellee was taken to a hospital in the city of Jackson where he was immediately examined and treated by a physician, who testified that the appellee's injuries consisted of a compound comminuted fracture of the tibia and fibula, meaning that the two bones in the leg were broken, and many contusions, bruises and abrasions about the body. The doctor testified that the ligaments, muscles and bones in the leg had been crushed to pieces, and that the question arose at once as to whether the leg should be amputated immediately; that he decided to treat the leg first, thinking that there might be a possibility of saving it, but that at the end of the week a severe infection of the wounds had developed, and it became apparent that the leg would have to be amputated. The doctor testified that he knew definitely within a week after the accident that the leg would have to be amputated; that the general condition of the patient at that time was such that an operation could not be performed immediately without great risk to the patient who was suffering severely from the infection of the wounds and whose temperature was running from 103 to 104 degrees. About the time the fever went down the patient developed a pulmonary embolus, blood clot from a vein in the leg that was beginning to go into his lung, and for that reason the amputation had to be postponed still longer. The embolus resulted from the injury. The doctor stated that it would have been very dangerous to amputate the leg of a man in that condition. The operation was performed on January 29, exactly three months after the date of the accident.

The appellant contends on this appeal, as he did in the court below, that the policies provided that no payment should be made unless the loss of a member should occur within thirty days from the date of the accident, and that since the amputation of the leg took place two months

after the expiration of such thirty-day period, there is no liability under the policies. The particular provision in the policies upon which the appellant's defense is predicated reads as follows:

"In every case referred to in this Policy the loss of any member shall include only the loss by severance at or above the ankle or wrist joints, and the loss of sight of eye or eyes shall include only the total and irrecoverable loss of the entire sight thereof. Not more than the amount payable for the loss of life shall be payable as the result of any accident, no matter what its character or result; and upon payment of any loss, this Policy shall at once terminate and all liability under same shall cease. No indemnity will be paid for loss resulting from, or for injuries caused by other means or under other conditions than those set forth herein, nor where death or loss of the member or members or eyesight does not occur within thirty days from the date of accident."

The theory upon which the plaintiff presented his case in the lower court, and upon which the trial judge acted in granting the peremptory instruction requested by the plaintiff, was that the above-quoted provision of the policies does not make payment depend upon the actual severance of the member within thirty days from the date of the accident; but that payment must be made for the loss of the member where the loss of the member occurs within thirty days from the date of the accident, even though the severance may not occur until after the thirty days has expired. The defendant, in the trial of the case in the lower court, contended that the words "loss of the member" meant loss by severance, and that since the policy provided that the "loss of the member" must occur within thirty days from the date of the accident, the "severance" must also occur within thirty days from the date of the accident. The trial judge rejected the theory of the defendant as to the proper construction of the above-mentioned provisions of the policies, and the appellant's assignments of error relate entirely to the

action of the trial court in granting the peremptory instruction requested by the plaintiff and in refusing to grant the peremptory instruction requested by the defendant.

The appellant's attorneys in their briefs have cited in support of their contention the case of Metropolitan Casualty Insurance Co. v. Shelby, 116 Miss. 278, 76 So. 839, in which this Court had before it an accident policy which provided for the payment of benefits for "the loss of one hand by severance at or above the wrist". The proof showed that the plaintiff's hand and wrist, as a result of an accident, had become paralyzed and atrophied and that the plaintiff had lost the use of his hand. But there had been no actual severance of the hand at or above the wrist. The Court held that under the terms of the policy the benefits were payable only in a case where there had been an actual severance at or above the wrist, and that no indemnity was payable under the terms of the policy in a case where there had been no severance of the member. The appellant's attorneys also cite several other cases from other states. But the facts in none of these cases, except the case of Clark v. Federal Life Insurance Co., 193 N. C. 166, 136 S. E. 291, are similar to the facts in the case that we now have before us. In the case of Clark v. Federal Life Insurance Co., supra, the plaintiff had suffered the loss of a foot from an injury received by him while he was riding in an automobile, which was wrecked in an accident. The plaintiff's leg was badly burned in the wreck of the automobile, and he was advised by a physician to have the leg amputated. But the plaintiff objected, because he was suffering, and also because he hoped that his leg might be saved. The flesh began to decay and the tendons of his leg sloughed off, exposing the bone. Finally, the leg was amputated by a surgeon seven weeks after the accident. The court in that case held that upon the facts established by the evidence it could not be said that there was a loss of the foot within thirty days from the date

of the accident. It should be borne in mind, however, that from the facts stated in the opinion in that case it appears that the amputation was delayed beyond the thirty-day period because the plaintiff hoped that his leg might be saved.

The appellee's attorneys rely mainly upon the general rule of law that ▮▮ ▮ accident insurance policies, like all other insurance policies, must be given a reasonable and sensible interpretation, and where policies of insurance are subject to two interpretations equally reasonable, that which gives the greater indemnity to the insured should be adopted by the court. And, as a case directly in point, the appellee's attorneys cite the case of Westenhover v. Life & Casualty Insurance Co., 27 So. (2d) 391, 392, in which the Court of Appeals of Louisiana had before it an accident insurance policy very similar to the policy that we now have before us. In that case suit had been brought on an accident policy to recover the sum of $500 for an injury very similar to the injury sustained by the appellee in the case that we now have before us, and the provisions of the policy relating to the payment of benefits included the provisions that "no sum shall be payable for the loss of any member except for total and permanent severance", and that "no payment will be made hereunder, unless . . . the loss of the member . . . occurs within thirty days from the date of accident." The plaintiff sustained his injury on August 24, 1945, and the actual amputation of the leg was made on November 2, 1945. The Court in that case, in reversing the judgment for the defendant and entering judgment for the plaintiff, said: "The provision of the policy at issue does not restrict the meaning of the loss of a member to amputation. It simply restricts liability for payment for the loss of a member to those cases in which such loss has been evidenced by amputation. Nor does the policy require that amputation, total and permanent severance, take place within thirty days, but simply that the loss of the member shall occur within thirty days from the date of the accident."

In the Westenhover case the Court also made these observations: ''The insured, under the terms of the policy under examination, cannot be penalized simply because his physicians attempted to prevent the necessity for amputation of his leg. The leg was 'lost' from and after the accident, therefore the requirement for the occurrence of loss within the thirty-day period was fully met, and the fact that the amputation was made sometime after the expiration of this period is of no importance. . . . It appears plain to us that the loss of plaintiff's leg followed as the immediate result of the accident. The fact that severance of the member by amputation did not take place until more than two months later is beside the point.''

In 44 C. J. S., Insurance, Sec. 296, page 1163, the rule relating to the construction of insurance contracts is stated as follows: ''A contract of insurance should be given a fair and reasonable construction and, likewise, should be given a sensible construction, consonant with the apparent object and plain intention of the parties; a construction such as would be given the contract by an ordinary intelligent business man; and a practical and reasonable rather than a literal interpretation. The contract should not be given a strained, forced, unnatural, or unreasonable construction, or a construction which would extend or restrict the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion, or render the policy nonsensical and ineffective.''

Our own Court in the case of Southern Home Insurance Co. v. Wall, 156 Miss. 865, 127 So. 298, 299, said: ''In construing the provisions of a contract of insurance, all the provisions of the policy must be so construed, if it can be reasonably done, so as to give effect to each. Where the policy is subject to two interpretations, equally reasonable, that which gives the greater indemnity to the insured will prevail. If one construction, looking to the other provisions of the policy, and to its general object and scope, would lead to an unreasonable result, such con-

struction must be abandoned, and that construction adopted which will be more consistent with reason. In all cases the policy must be liberally construed in favor of the insured, in order to accomplish the purpose of the insurance.''

According to the doctor's testimony in the case that we have before us, the loss of appellee's leg followed as the immediate result of the accident. The actual amputation was delayed, not because the appellee or the doctor entertained any hope that the leg might be saved, but because of the weakened condition of the appellee who was suffering from the severe infection and fever directly resulting from the accident and who would probably not have been able to survive the shock incident to a major operation. The operation was delayed not because of any hope that the leg might be saved, but for the purpose of avoiding the risk of killing the patient. Accident policies, like all other insurance policies, must be given a reasonable and sensible interpretation. The loss of the member occurred within thirty days from the date of the accident. The fact that the actual amputation had to be delayed for more than thirty days to avoid killing the patient whose extreme condition was due to the injuries received in the accident did not relieve the appellant from liability on the policy. No error was committed by the lower court in instructing the jury to return a verdict for the plaintiff, and the judgment of the lower court is affirmed.

Affirmed.

**Alexander, Hall, Lee** and **Arrington, JJ.,** concur.