Peter HANSER, Plaintiff,

v.

RALSTON PURINA COMPANY,
Defendant.

No. 92–74351.

United States District Court,
E.D. Michigan, S.D.

May 24, 1993.

474

Kenneth D. Clayton, Flynn Wendzel & Bridges, Pontiac, MI, for plaintiff.

Andrea Maya Windholz, Dickinson Wright, Detroit, MI, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

GADOLA, District Judge.

Plaintiff filed this action in Wayne County Circuit Court on July 7, 1992. On July 29, 1992, defendant removed the action to federal court on the basis of federal question jurisdiction under 29 U.S.C. § 1132, the Employee Retirement Income Security Act of 1974 ("ERISA"); at the same time, defendant filed an answer to the complaint. On December 21, 1992, defendant filed the instant motion for summary judgment. Plaintiff responded January 8, 1993. Defendant filed a reply January 20, 1993. Discovery closed in this case May 1, 1993. On May 13, 1993, the court heard oral arguments on this motion.

### I. Facts

Plaintiff began working for defendant September 13, 1959. His last job with defendant was as an assistant superintendent of a commercial bakery. His duties included supervising foremen, scheduling shops, reporting production and insuring adherence to quality standards. Plaintiff worked long hours and described his work environment as hot, humid and noisy.

According to plaintiff, he performed his job well and without incident until approximately three years ago when a new owner (that is, the defendant), took over the bakery and developed a number of production line changes. In early 1989, plaintiff's work hours increased dramatically. According to plaintiff, he would work seven days a week from 3:00 a.m. until 12:00 p.m. and again from 4:00 p.m. until 9:00 p.m. This schedule lasted approximately three months. During this period, plaintiff began to experience symptoms of nausea, dizziness, vomiting, accelerated heart beat, and overheating. In June of 1989, plaintiff fainted while at work. Plaintiff was referred to a physician who treated him for low blood sugar and for chemical depression which apparently had resulted from poor diet.

According to plaintiff, pressure from upper management continued through the months that followed. Plaintiff suffered from stress as a result of this pressure; he felt he was being overworked, harshly criticized, and that his talents were not appreciated. On January 12, 1990, an inspection of the bakery resulted in plaintiff's being "picked apart pretty good." As a result of this criticism, plaintiff broke into a sweat, became unsteady in his walk, and began to babble. He was escorted to a rest area where he vomited. Plaintiff was driven home and seen later that day by his family doctor who noted an increase in his blood pressure and heart rate. January 12, 1990 was the last day plaintiff worked for defendant.

In January 1990, plaintiff began psychotherapy treatment with Dr. Gordon Forrer, a psychiatrist who has since treated plaintiff on weekly basis. In June 1990, plaintiff applied for long-term disability benefits claiming disability due to an emotional disorder. In support of his application for benefits, plaintiff submitted to defendant a form entitled "Physician's Statement of Disability" dated June 12, 1990 and signed by Dr. Forrer.

On the form, Dr. Forrer indicated that plaintiff had an "emotional disorder—situational adjustment disorder (anxiety, tachycardia)" and that his symptoms were "anxiety—rapid heart beat, flushing, tremor." Exhibit 2 to Defendant's Brief. Question 14

of the form asks whether the patient (that is, the plaintiff in this case) is "now totally disabled based on education, training, and prior experience," and asks for the "[d]ate patient was released to return to work." *Id.* In response to the first part of question 14 regarding disability, Dr. Forrer wrote "no"; in response to the second, he wrote "NA," apparently short for "not applicable." *Id.* Next to the first part of question 14 are two boxes: one entitled "Regular Occupation"; the other entitled "Any Occupation." *Id.* Under each of these boxes, the form provides a choice of "Disabled" or "Not Disabled." *Id.* Dr. Forrer checked "disabled" under the "regular occupation" box, and "not disabled" under the "any occupation" box. *Id.*

Question 15 of the form asks for the "[a]pproximate date patient may resume work in either occupational category." *Id.* To that question, Dr. Forrer responded with "undetermined." *Id.* Question 16 of the form asks, "What restrictions, if any, would be placed upon patient's return to work?" *Id.* Dr. Forrer again responded, "cannot be determined." *Id.* Under question 17, the physician is asked, "Can present job be modified to allow for handling with impairment?" *Id.* Next to this question, Dr. Forrer checks "yes." *Id.* Finally, under the "Remarks" section of the form, Dr. Forrer writes that the patient is a "[h]ard working loyal employee—severely distressed re [sic] personnel changes where his extensive knowledge of the baking process is ignored [and] overruled." *Id.*

On July 10, 1990, Dr. Forrer submitted a second "Physician's Statement of Disability" form. *Id.* On this form, he indicated in response to question 14 that plaintiff was subject to no disability either from plaintiff's regular occupation or from any occupation. *Id.* To question 15, Dr. Forrer indicated that plaintiff "possibly" could return to work in either occupation category as of July 10, 1990. *Id.* To all other questions on the form, including the "remarks" section, Dr. Forrer answered as he had on June 12, 1990.

On August 6, 1990, defendant's disability management coordinator, Denise Frank, wrote to Dr. Forrer requesting various medical records and information; defendant

asked for plaintiff's medical records, for Dr. Forrer's objective results from psychological testing, for an evaluation by Dr. Forrer of plaintiff's ability to manage in his daily living, and for an evaluation by Dr. Forrer of plaintiff's ability to perform the tasks of plaintiff's job as described by defendant in an enclosure. Ex. 3 to Defendant's Brief. Dr. Forrer responded by letter dated August 23, 1990. *Id.* Dr. Forrer stated that no psychological testing was done on plaintiff; that plaintiff's diagnosis was based on clinical observation; that plaintiff no longer has any psychological limitations on his daily living; and that plaintiff was capable of performing all the tasks listed in his job description. *Id.*

Based upon all of the information provided by Dr. Forrer, defendant determined that plaintiff was not totally disabled from his occupation and therefore not eligible to receive long term disability benefits. *Id.* By letter dated September 12, 1990, defendant notified plaintiff of its decision and notified plaintiff that he had 60 days to request review of the decision. *Id.* After the expiration of this 60 day period, defendant received a letter from Dr. Forrer dated December 6, 1990. *Id.* Dr. Forrer stated that in his letter dated August 23, 1990, he meant only to indicate that plaintiff was capable of performing the physical tasks covered by his job description; he did not mean to state an opinion as to whether plaintiff could return to the "specific environmental circumstance within which his symptoms first surfaced." *Id.* Dr. Forrer further stated his opinion that an independent medical evaluation should be set up to determine whether plaintiff was capable of returning to the "particular work circumstance/situation which he held at the time he went on sick leave." *Id.*

In response to this letter, defendant notified plaintiff on January 15, 1991, that he had been granted an extension of the time within which he could request review of the September 12, 1990 decision to deny benefits. *Id.* On January 28, 1991, plaintiff requested such review. *Id.* Defendant notified plaintiff by letter dated February 27, 1991, that a review was being conducted, that plaintiff could submit additional comments or issues to be included in the review, and that a determination would be issued by April 10, 1991. *Id.*

Thereafter defendant engaged Dr. Michael J. Freedman, a psychiatrist, to perform an independent psychiatric evaluation of plaintiff. By letter dated March 18, 1991, Dr. Freedman reported the results of this evaluation. Dr. Freedman's diagnosis was that plaintiff had "undergone a situational adjustment reaction with some depressive and anxious features. This condition appears to be basically cleared at this point in time." Ex. 4 to Defendant's Brief. Subsequent to this evaluation, plaintiff's claim for long term disability benefits was denied again. Plaintiff appealed this decision July 19, 1991, claiming that his doctors would not release him to return to work but offering no new evidence that he was totally disabled. Ex. 3 to Defendant's Brief. On November 27, 1991, defendant notified plaintiff of its final determination that plaintiff was not totally disabled under the terms of defendant's long term disability plan. *Id.*

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990).

However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

■ This action challenges the denial of benefits under an employee benefits plan. Where an employee benefits plan gives the plan administrator the discretionary authority to determine the eligibility for benefits or to construe the terms of the plan, a court is to review that decision under an arbitrary and capricious standard of review. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 114, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Defendant's plan provides that

> ... the interpretation of all Plan provisions, and the determination of whether a Participant or Beneficiary is entitle to any benefit pursuant to the terms of the Plan, shall be exercised *by the Plan in its sole discretion.*

Ex. 1 to Defendant's Brief at page 9. Clearly by these terms, the plan administrator in this case had the discretionary authority to determine plaintiff's eligibility for benefits. Therefore, the court must apply an arbitrary and capricious standard in reviewing the defendant's decision to deny plaintiff benefits.

■ Under the arbitrary and capricious standard of review, an administrator's decision will be overturned only upon a showing of internal inconsistency, bad faith, or some other ground for calling such determinations into question. *Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689, 695 (6th Cir.1989). If the plan administrator's evaluation or interpretation has a rational basis, a court reviewing the determination under the arbitrary and capricious standard should not disturb that determination. *See Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 982 (6th Cir.1991).

Under the terms of defendant's long term disability plan, plaintiff was entitled to receive long term benefits "[u]pon receipt of written proof that [plaintiff] ... shall have become totally disabled...." Ex. 1 to Defendant's Brief. "Total Disability" is defined by the plan as "the complete inability of [plaintiff] to perform any and every duty of his *regular occupation.*" *Id.* Nowhere in

the plan is the term "regular occupation" defined.

Defendant's decision to deny benefits was based on its interpretation of "total disability" as meaning the "complete inability of the covered person to perform any and every duty of his regular occupation, *at any location or for any employer.*" Ex. 3 of Defendant's Brief at page 2 (emphasis included in original). The issue in this case therefore is whether plaintiff has demonstrated the existence of any facts which would support a finding that defendant's interpretation of the plan was arbitrary or capricious.

■ Plaintiff argues that "regular occupation" should be defined as an employee's specific job within the company. While the court cannot say that this interpretation of the terms "regular occupation" is wrong, it is still simply one interpretation. The question to which the court must address itself is whether the defendant's interpretation of the term is irrational, that is, arbitrary or capricious, or made in bad faith. *Davis*, 887 F.2d at 695. The court finds that defendant's interpretation of the terms "regular occupation" as meaning the type of work which a covered employee is trained to perform rather than the specific job at which the employee was working when he became ill, is a rational interpretation supported by the plain meaning of the words.

■ Furthermore, the court finds that there is no evidence that defendant has acted in bad faith towards plaintiff. In fact, to the contrary, defendant extended plaintiff's first review period in order that an independent medical examination could be made. Defendant appears to have made considerable efforts to ensure that its decision to deny plaintiff benefits was based on sound medical evidence.

■ Plaintiff argues that he is entitled at the very least to receive disability benefits until March 18, 1991, when it became absolutely clear by virtue of Dr. Freedman's evaluation that plaintiff was not disabled from his regular occupation. The court finds that as of July 10, 1990, when Dr. Forrer signed a form which noted that plaintiff was no longer under any disability, there is no medical evidence that plaintiff was disabled; thus, after July 10, 1990, defendant therefore had no obligation to provide plaintiff with long term disability benefits.

■ The period of June 12, 1990, through July 10, 1990, was covered by Dr. Forrer's first form submission, dated June 12, 1990, wherein Dr. Forrer indicated that plaintiff was disabled from his regular occupation as a result of an emotional disorder arising out of "personnel changes." As to this period, the court finds that defendant's decision to deny benefits cannot be characterized as arbitrary or capricious. The notation of Dr. Forrer indicating that plaintiff's emotional disorder arose out of personnel changes clearly supports a determination by defendant that plaintiff's illness amounted to extreme unhappiness with his new employer and with the persons who were now assigned to supervise his work. It was rational for defendant to conclude that plaintiff was not totally disabled from performing his regular occupation but rather was unable to return to the specific environment where he had been performing that occupation.

For the foregoing reasons, the court finds that plaintiff has failed to demonstrate that there exists any genuine issue of material fact as to whether defendant's decision to deny him benefits was arbitrary or capricious, or otherwise made in bad faith. Therefore, defendant's motion for summary judgment will be granted.

### ORDER

Therefore, it is hereby **ORDERED** that defendant's motion for summary judgment is **GRANTED**.

**SO ORDERED.**