**Phillip B. McDUFFEY, Plaintiff,**

v.

**MICHIGAN CONFERENCE OF TEAMSTERS WELFARE FUND, Defendant.**

**Civ. A. No. 94–70093.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 19, 1994.

404

Robert A. Canner, Canner & Bloom, Southfield, MI, Michael F. Jacobson and Steve J. Weiss, Hertz, Schram & Saretsky, P.C., Bloomfield Hills, MI, for Phillip B. McDuffey.

Kevin J. O'Neill, Hoffa, Chodak & Robiner, Detroit, MI, for Michigan Conference of Teamsters.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff Phillip B. McDuffey filed a complaint against defendant Michigan Conference of Teamsters Welfare Fund ("Fund") for medical benefits under state law in the Forty–Sixth Judicial District Court in Oakland County, Michigan. Defendant removed the action to federal court on the basis of federal question jurisdiction under 29 U.S.C. § 1132, the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant filed the instant motion for summary judgment on August 24, 1994. Plaintiff filed a response opposing the motion on August 22, 1994. Defendant filed a reply on November 2, 1994. Plaintiff filed a response to defendant's reply on November 14, 1994.

### I. Facts

On October 1, 1991, plaintiff was at work, loading a garbage truck, when he was struck by a moving car. As a result of the accident, plaintiff sustained a crushing injury to his lower left leg. At the time of the accident,

plaintiff was a participant in the Fund's SO(A) plan, which provides an accidental dismemberment benefit of $10,000 under certain conditions. The plan is governed by ERISA and is provided pursuant to a collective bargaining agreement.[1] The terms of the SO(A) plan are explained to the participants in a Summary Plan Description or benefits booklet. The benefits booklet for the SO(A) plan provides in pertinent part:

| EVENT | BENEFIT |
| --- | --- |
| .... | |
| Your loss of one hand or one foot | $10,000 |
| ... | |

Accidental Death and Dismemberment (AD & D) benefits are paid if you die or are seriously injured as the result of an accident. AD & D benefits are paid in addition to death benefits.

If you die or suffer a loss as described below within 90 days after an accident you or your beneficiaries will receive benefits as follows:

| WHO RECEIVES BENEFIT |
| --- |
| you |

The loss of a foot means severance at or above the ankle ...

Plaintiff's left leg was amputated just below the knee on June 1, 1992. On June 4, 1992, Plaintiff submitted a claim to the Fund for accidental dismemberment. Defendant denied plaintiff's claim on June 18, 1992 and notified plaintiff of the rejection in a letter dated June 29, 1992. In the letter, the Fund explained that plaintiff's application for dismemberment benefits was denied because his loss of limb did not occur within 90 days of his accident. The letter informed plaintiff of his right to appeal to the Fund's Board of Trustees ("Trustees").

On August 17, 1992, plaintiff began to appeal the Fund's denial of benefits through the various stages of review set out in the Fund's plan. The Fund has three levels of appeal after the initial claim denial. The first level review is made by an appeal committee of five persons; a second committee reviews the first committee's decision. Final appeal is to the Board of Trustees, which is composed of three management and three union representatives. In February 1993, the first level appeal committee denied plaintiff's claim for benefits. The Fund then automatically sent the appeal through the second level appeal committee. The second lev-

el appeal committee also denied plaintiff's claim. On November 18, 1993, plaintiff's appeal was referred to the Trustees for their consideration. On December 15, 1993, the Trustees denied plaintiff's claim for benefits. The Trustees sent plaintiff a letter explaining that plaintiff did not qualify for the accidental dismemberment benefits because he lost his limb eight months after his accident and the plan only provides benefits for loss of a limb within 90 days of the injury.

On October 1, 1993, plaintiff filed suit in Michigan state court, in the Forty–Sixth Judicial District Court. In Count I of his complaint, plaintiff alleged that he "falls within the intent and purpose of the provisions of the dismemberment clause of said insurance policy because the sole reason for the amputation of Plaintiff's leg was the result of the accident which occurred on October 1, 1991, and Defendant is thus liable for said benefits." Complaint para. 9. In Count II of his complaint, plaintiff alleged that defendant agreed to pay plaintiff dismemberment benefits if plaintiff accidentally lost a limb, but has failed to pay the benefits of $10,000. Complaint para. 10 and 11. Defendant removed this case to federal district court on the basis of federal question jurisdiction un-

---

1. The Fund is established by a Trust Agreement between the settlors Michigan Teamsters Joint Council No. 43 and two employer associations, the Michigan Cartagemen's Association and the Motor Carriers Employer's Association of Michigan.

der ERISA. On August 24, 1994, defendant filed the instant motion for summary judgment, contending that plaintiff's state law claims are preempted by ERISA. In addition, defendant asserts that plaintiff does not have a valid claim for recovery of benefits under the provisions of ERISA.

## II. Standard Of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genu-

ine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings. *Id.*

## III. Analysis

Plaintiff challenges the Fund's denial of benefits for his accidental dismemberment. The Fund contends that plaintiff's state law claims are preempted by ERISA. In addition, the Fund contends that the Trustees' decision denying plaintiff benefits for accidental dismemberment was not arbitrary or capricious.

### A. Preemption of State Law Claims

ERISA provides for comprehensive regulation of employee benefits plans. 29 U.S.C. §§ 1002, 1003. It contains an express

provision that preempts state law claims that relate to a benefit plan. *Id.* § 1144. Section 1144(a) provides as follows:

> Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.

*Id.* Section 1144(b) is a savings clause that exempts certain state laws from the preemptive effect of section 1144(a). State laws that "regulate[ ] insurance, banking or securities" are not preempted by ERISA. *Id.* § 1144(b)(2)(A).

■ The court finds that plaintiff's state law claims seeking benefits denied him by the Fund are preempted by ERISA. It is clear that plaintiff's claims relate to the Fund's benefit plan, which is covered by ERISA. Further, the exclusive remedy for a participant seeking recovery of benefits denied by an ERISA-governed plan is provided by ERISA, 29 U.S.C. § 1132(a)(1)(B). *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 52, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). In his response to defendant's motion for summary judgment, plaintiff does not offer any argument against preemption of his claims for benefits by ERISA.

A participant of a plan may sue for recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). Section 1132(a)(1)(B) provides:

> A civil action may be brought
>
> (1) by a participant or beneficiary
>
> (A) for the relief provided in subsection (c) of this section, or
>
> (B) to recover benefits due to him under the terms of this plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan.

This court will construe plaintiff's complaint as alleging a claim under 29 U.S.C. § 1132(a)(1)(B).

## B. Standard of Judicial Review in ERISA cases

■ If an employee benefits plan gives a plan administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, then a district court reviews the decision to deny benefits under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). *See also, Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 694 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990). The court must therefore determine whether the terms of the Revised and Amended Trust Agreement for Michigan Conference of Teamsters Welfare Fund ("Trust Agreement") provide Trustees with sufficient discretion to require this court to review their decision under the arbitrary and capricious standard. Article V, Section 7, of the Trust Agreement provides Trustees with the power to create benefit plans, such as group health plans and accident and death benefit plans. The Trust Agreement also provides Trustees with the authority to "do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder." Trust Agreement, Article V, Section 9(G). Exhibit 3 to plaintiff's response to defendant's motion for summary judgment. Further, the Trust Agreement enables Trustees to formulate and promulgate any rules and regulations which they deem necessary for the proper administration of the Trust and gives the Trustees power to construe the provisions of the Trust Agreement and the terms used in the Agreement. Trust Agreement, Article V, Sections 11 and 21. Exhibit 3 to plaintiff's response to defendant's motion for summary judgment. In Article VI of the Trust Agreement, the Trustees are given the following authority:

> Any question or controversy, of whatsoever character, arising in any manner or between any parties or persons in connection with the Trust Fund or the operation thereof, whether as to any claim for any benefits proffered by any member, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees in this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust

Fund or otherwise, may be submitted to the Board of Trustees for decision in accordance with the regulations adopted by the Board, and the decision of a majority of the Board, if made in good faith, shall be binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.

Trust Agreement, Article VI, Section 2 (emphasis added). Exhibit 3 to plaintiff's response to defendant's motion for summary judgment. The terms of the Trust give Trustees the authority to create benefit plans, to decide questions of eligibility for benefits, and to interpret the terms of the Trust and the benefit plans thereunder. The Sixth Circuit found that a plan with provisions similar to the Fund's provisions granted sufficient discretion for a committee's denial of benefits to be reviewed under the arbitrary and capricious standard. In *Johnson v. Eaton Corp.*, 970 F.2d 1569 (6th Cir. 1992), the plan at issue provided the committee the right to make rules and stated that the committee's denial of claims "shall constitute the final disposition under [the] Plan." The Sixth Circuit explained that because the plan made the committee the final arbiter, the committee members must have been "entrusted with the authority to exercise their judgment, or discretion, in interpreting and applying the eligibility provisions." *Id.* at 1572. The court finds that the language of the Trust Agreement provides Trustees with sufficient discretion to qualify the Trustees' decision for review under the arbitrary and capricious standard.

▇▇ Plaintiff argues that this court should not review Trustees' decision under the arbitrary and capricious standard because the Trust Agreement does not grant Trustees discretion: (1) to make reasonable requests for documentation; and (2) to determine what evidence may be required to provide a basis for [benefit eligibility] determi-

nation. Plaintiff relies on *Miller v. Metropolitan Life Ins. Co,* 925 F.2d 979 (6th Cir. 1991) to support his argument. Plaintiff misapplies the holding of *Miller.* In *Miller,* the Sixth Circuit analyzed an ERISA plan which did not give the insurer complete discretion with respect to the ultimate determination of benefit eligibility and therefore the court looked at specific grants of discretion. In the instant case, the Trust Agreement gives Trustees the final authority to determine eligibility for benefits; therefore, it is irrelevant that the Trustees do not have the explicit authority to request documents. Moreover, plaintiff has been unable to explain what documents Trustees should have requested in order to make a determination of plaintiff's eligibility for benefits. Both parties agree on the date of the accident, the date of the amputation and the fact that plaintiff's leg was functionally useless after the accident. The only dispute in this case is over the Trustees' interpretation of the language of the plan. Lastly, in two cases decided after *Miller,* the Sixth Circuit reviewed the decision of administrators under the arbitrary and capricious standard without requiring that the plan provide the administrator with the ability to request documents. *See Johnson v. Eaton Corp.,* 970 F.2d 1569 (6th Cir.1992); *Callahan v. Rouge Steel Co.,* 941 F.2d 456, 459 (6th Cir.1991).[2]

## C. Denial of Benefits

▇▇ Under the arbitrary and capricious standard of review, an administrator's decision will be overturned only upon a showing of internal inconsistency, bad faith or some other ground for calling such determinations into question. *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 695 (6th Cir.1989). If the plan administrator's evaluation or interpretation has a rational basis, a court reviewing the determina-

---

**2.** Plaintiff also relies on *Klei v. Metropolitan Life Ins. Co.,* No. 91–76942, 1992 U.S.Dist. LEXIS 21285 (E.D.Mich. Oct. 30, 1992). In *Klei,* the court explained that *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979 (6th Cir.1991) held that an ERISA plan does not have to give the insurer complete discretion to trigger the arbitrary and capricious standard of review. *Id.* at *13. The court explained that under *Miller,* if the adminis-

trator had discretion to make reasonable requests for documentation and to determine what evidence is required for eligibility that would be sufficient discretion to trigger the arbitrary and capricious standard of review. In the instant case, Trustees had full discretion to determine benefit eligibility. Therefore, it is irrelevant whether Trustees had the authority to request documents.

tion under the arbitrary and capricious standard should not disturb that determination. *See Hanser v. Ralston Purina Company*, 821 F.Supp. 473, 477 (E.D.Mich.1993).

▮ Under the terms of the SO(A) plan, plaintiff was entitled to $10,000 if he suffered a "loss" within 90 days after an accident. The plan defined the term "loss" to mean "severance." Plaintiff argues that he should not have been denied benefits because the plan is ambiguous in two ways. First, plaintiff argues that "suffer a loss" may mean that only the initial accident need be within 90 days or it may mean that the amputation also must occur within 90 days. Second, plaintiff argues that "severance" may mean total loss or use of the foot or actual physical separation of the foot. Plaintiff argues that because he no longer had use of his foot after the accident, he suffered a loss on the date of the accident. Plaintiff argues that the rule of *contra proferentum* applies in the instant case and cites cases from Alabama, Tennessee, and Mississippi which hold that an ambiguous term in an insurance contract should be construed in favor of the insured. *Interstate Life and Accident Co. v. Waters*, 213 Miss. 265, 56 So.2d 493 (1952); *Huff v. Vulcan Life and Accident Ins. Co.*, 281 Ala. 615, 206 So.2d 861 (1968); *Westenhover v. Life & Casualty Ins. Co. of Tenn.*, 27 So.2d 391 (1946). However, these state cases involving insurance plans governed by state law do not control the interpretation of an ERISA plan. *See McMahan v. New England Mutual Life Ins. Co.*, 888 F.2d 426 (6th Cir.1989).

▮ In plaintiff's response to defendant's reply, plaintiff argues that the rule of *contra proferentum* has been adopted as a rule of federal common law to interpret an ERISA plan. *Tolley v. Commercial Life Ins. Co.*, Nos. 92–6490, 92–6514, 1993 WL 524284, U.S.App. LEXIS 33508 (6th Cir. 1993). However, in *Tolley*, defendant Commercial Life Insurance Company did not have any discretionary power under the ERISA plan and therefore the district court reviewed defendant's denial of benefits *de*

*novo*. In order to interpret the terms of the plan, the court explained that it could use traditional rules of contract interpretation, such as *contra proferentum*, to resolve any ambiguity of the plan. However, the court did not apply the rule of *contra proferentum* because it found that the terms of the plan were not ambiguous. In the instant case, the court will not apply the *de novo* standard of review. The Trust Agreement gives Trustees discretion to interpret the terms of the plan and plaintiff's eligibility and therefore the Trustees' decision will be reviewed under the arbitrary and capricious standard. As a result, plaintiff's argument that there are other possible interpretations of the plan terms is not sufficient for the court to overturn a rational decision made by the Trustees. Further, the court finds that because the term "loss" is explicitly defined as "severance" in the ERISA plan, there is no ambiguity which would require the court to apply a rule of contract interpretation such as the rule of *contra proferentum*. Defendant further supports his argument by citing cases in which courts have determined that the rule of *contra proferentum* does not apply to plans that result from a collective bargaining agreement, such as the plan in the instant case. *See Eley v. Boeing Co.*, 945 F.2d 276, 279–280 (9th Cir.1990); *see also Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 540 (9th Cir.1989) *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990).[3]

▮ Plaintiff argues that the Trustees' interpretation of the plan was irrational because it required him to choose between trying to save a limb and taking monetary compensation within a specified time limit. Under the terms of the plan, plaintiff had 90 days to determine whether he wished his leg to be amputated. The fact that the plan forces beneficiaries to decide within 90 days whether to amputate a limb does not show that the decision of the Trustees was irrational.

▮ Plaintiff argues that he should have been granted benefits because there is no

---

**3.** Defendant also cites *McLain v. Metropolitan Life Ins. Co.*, 820 F.Supp. 169, 176 n. 7 (D.N.J. 1993), which states that even if the terms of an ERISA policy are ambiguous, the rule that ambi-

guities in an insurance policy are to be construed against the insurer is inapplicable to cases governed by ERISA.

dispute that his leg was amputated as a result of the accident. Plaintiff argues that the primary reason that time limitations are placed on dismemberment clauses is to preclude false claims and therefore the time limit should not apply in his case because there is no dispute over causality. Plaintiff may be correctly interpreting the intent of the writers of the plan. However, the terms of the plan are clear that the "loss" of a beneficiary's foot must occur within 90 days. Therefore, under the terms of the plan, plaintiff is not eligible for benefits.

Lastly, plaintiff argues that the decision of the Trustees violates public policy because it forces claimants to choose between money and medical care. The provision allows beneficiaries 90 days to consider whether to amputate their limbs. The court finds persuasive that many state and federal courts have upheld insurance policies which provide benefits for accidental death and dismemberment only if the death or dismemberment takes place within 90 days of the accident. *See* "Validity and Construction of Provision in Accident Insurance Policy Limiting Coverage For Death Or Loss of Member To Death Or Loss Occurring Within Specified Period After Accident," 39 A.L.R.3d 1311 (collection of cases involving insurance policies with time limitations for loss of member after accident). Plaintiff has not shown that public policy requires that ERISA plans provide beneficiaries with the right to determine whether to amputate their limbs without any time limit.

Both parties agree that plaintiff's leg was amputated eight months after the accident. The plan provides that a claimant must "suffer a loss ... within 90 days after an accident." The plan defines "loss" as severance. Plaintiff has not shown that the Trustees' decision to deny plaintiff benefits because the "severance" of plaintiff's foot occurred at the time of his amputation was irrational. Also, plaintiff has not come forward with any evidence indicating the Trustees denied plaintiff benefits in bad faith. Under these circumstance, the court does not find that Trustees' decision to deny plaintiff benefits was arbitrary or capricious.

### ORDER

Therefore, it is hereby **ORDERED** that defendant Michigan Conference of Teamsters Welfare Fund's motion for summary judgment is **GRANTED**. Plaintiff's complaint is **DISMISSED**.

**SO ORDERED.**