961 F.2d 1576
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Russell P. BOWEN, Plaintiff-Appellant,
v.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND
WELFARE FUND, Defendant-Appellee.
 No. 91-3981.
 United States Court of Appeals, Sixth Circuit.
 May 6, 1992.
 
 Before KEITH and MILBURN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Russell P. Bowen appeals the district court's grant of summary judgment in favor of defendant Central States, Southeast and Southwest Areas Health and Welfare Fund in this action involving the interpretation of a medical insurance plan to allow for subrogation of rights in cases involving uninsured motorist coverage. On appeal, the issues are: (1) whether the district court erred in granting summary judgment in favor of defendant; and (2) whether the Trustees of defendant Central States Health and Welfare Fund, plaintiff's medical insurance provider, were arbitrary and capricious in providing for subrogation rights against a participant's uninsured motorist insurance. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Plaintiff and his wife were injured in an automobile accident in Clark County, Ohio on May 24, 1986. Plaintiff suffered serious injuries as a result of the accident, and, because the driver of the other automobile involved, Jeff Vernon, had no insurance, plaintiff brought a claim with his own insurance company, the Cincinnati Insurance Company, under his uninsured motorist coverage. Plaintiff paid the premiums for his uninsured motorist coverage yearly, the last premium being $79.00.
 
 
 3
 Plaintiff, through his employment, is a participant in the Central States, Southeast and Southwest Areas Health and Welfare Fund, the defendant herein. Subsequent to the accident, defendant paid plaintiff's medical expenses arising out of the accident in an amount totaling $18,165.04. Thereafter, plaintiff brought an action against Jeff Vernon and plaintiff's insurance carrier under plaintiff's uninsured motorist coverage. A settlement was reached with plaintiff's insurance carrier under which the carrier paid plaintiff $50,000.00, the limits of plaintiff's uninsured motorist coverage. However, in order to institute his action and obtain a settlement with his insurance carrier, plaintiff incurred attorney's fees and costs in excess of $19,000.00.
 
 
 4
 While plaintiff's legal action against Vernon and plaintiff's insurance carrier was pending, defendant mailed a Notice of Lien to the Cincinnati Insurance Company. The Notice of Lien placed the insurance carrier on notice of the total amount of medical benefits paid by defendant on plaintiff's behalf, informed the insurance carrier that defendant was a Taft-Hartley Trust governed by ERISA, 29 U.S.C. § 1001 et seq., and an Employee Welfare Benefit Plan as defined in 29 U.S.C. § 1002(1). The notice further informed plaintiff's insurer that pursuant to the Plan Documents, the defendant was subrogated to any right of recovery arising out of the automobile accident.
 
 B.
 
 5
 As a result of the Notice of Lien, plaintiff's insurance carrier listed defendant as a payee on the settlement check. This resulted in plaintiff's filing a state court complaint on March 16, 1990, against defendant seeking judgment in the amount of $18,165.04. On April 13, 1990, defendant removed the case to federal district court pursuant to 28 U.S.C. § 1441. Subsequently, on April 26, 1990, plaintiff filed a motion to remand the case to state court under 28 U.S.C. § 1447. However, the motion to remand was denied on June 11, 1990.
 
 
 6
 On October 12, 1990, defendant filed a motion for summary judgment. The matter was referred to a United States Magistrate who recommended that summary judgment be entered in favor of defendant in a Report and Recommendation dated November 17, 1990. Plaintiff moved for rehearing of the Magistrate's Report and Recommendation on November 23, 1990. The motion for rehearing was granted that same day.
 
 
 7
 On May 13, 1991, the Magistrate issued a Report and Recommendation, again recommending that summary judgment be granted in favor of defendant. Further objections were made by plaintiff, resulting in a second Report and Recommendation being issued by the Magistrate on July 18, 1991, which again recommended that summary judgment be granted in favor of defendant. On September 13, 1991, the district court adopted the Magistrate's Report and Recommendation and entered summary judgment in favor of defendant. This timely appeal followed.
 
 II.
 A.
 
 8
 Plaintiff argues that the district court erred in granting summary judgment in favor of defendant, because defendant's actions with regard to the subrogation of his recovery under his uninsured motorist insurance were arbitrary and capricious. This court reviews a district court's grant of summary judgment de novo. See Faughender v. City of North Olmsted, Ohio, 927 F.2d 909, 911 (6th Cir.1991). Summary judgment is proper under Federal Rule of Civil Procedure 56(c) if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988).
 
 B.
 
 9
 In this case, the parties are in agreement that the defendant, Central States, Southeast and Southwest Areas Health and Welfare Fund, is a Taft-Hartley Trust governed by ERISA. Thus, the district court reviewed defendant's actions under an arbitrary and capricious standard of review. Prior to the decision of the Supreme Court in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the law was well-settled that the arbitrary and capricious standard applied to decisions by plan administrators under ERISA. However, in Bruch the Supreme Court held that a de novo standard of review should apply unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id., 489 U.S. at 115.
 
 
 10
 In this case, the Trustees do have discretionary authority to determine eligibility for benefits and to construe the terms of the plan. Article IV, section 9 of the Trust Agreement states:
 
 
 11
 The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust, provided the same are not inconsistent with the terms of the Agreement, and the Articles in the Central States, Southeast and Southwest Areas Agreements creating the Health and Welfare Fund. All rules and regulations adopted by action of the Trustees for the administration of the Trust Fund shall be binding upon all parties hereto, all parties dealing with the Trust, and all persons claiming any benefits hereunder.
 
 
 12
 J.A. 365. Article IV, section 17 of the Trust Agreement further states:
 
 
 13
 The Trustees, by majority action, shall have the power to construe the provisions of this Agreement and the terms and regulations of the Health and Welfare Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers.
 
 
 14
 J.A. 368. Finally, Article V, section 2 of the Trust Agreement states:
 
 
 15
 All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof, whether as to any claim for any benefits preferred by any participant, beneficiary, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees or of such committee thereof shall be binding upon all persons dealing with the Fund or claiming any benefit thereunder.
 
 
 16
 J.A. 369. Thus, because the plan administrators, the Trustees, are given discretion in interpreting the language of the plan as well as eligibility for benefits under the plan, the district court correctly applied the arbitrary and capricious standard to this case. See Davis By and Through Farmers Bank & Capital Trust Co. of Frankfort, Kentucky v. Kentucky Finance Cos. Retirement Plans, 887 F.2d 689, 694 (6th Cir.1989), cert. denied, 110 S.Ct. 1924 (1990).
 
 C.
 
 17
 In reviewing a district court grant of summary judgment in an ERISA case in which the arbitrary and capricious standard applies, this court must determine whether there is any genuine issue of material fact as to whether the Trustees' actions were arbitrary and capricious. See Davis, 887 F.2d at 694. According to the clear weight of authority, the actions of the Trustees in administering an ERISA plan must be sustained as a matter of law unless plaintiff can prove such activities have been arbitrary or capricious. See Dennard v. Richards Group, Inc., 681 F.2d 306, 313 (5th Cir.1982).
 
 
 18
 When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. Id. at 693. In applying the arbitrary and capricious standard, the reviewing court's role is limited to a determination of whether the Trustees' actions were done rationally and in good faith, not whether it is right. See Guy v. Southeastern Iron Workers' Welfare Fund, 877 F.2d 37, 39 (11th Cir.1989). Among the factors taken into account in determining whether an action was arbitrary and capricious are (1) uniformity of construction, (2) fair reading and reasonableness of that reading, and (3) unanticipated costs. Id.
 
 
 19
 On appeal, plaintiff asserts that the Trustees acted in an arbitrary and capricious manner in subrogating a portion of his recovery from his insurance company because the right to recovery was created solely by the insured plaintiff with his own money. Plaintiff argues that the Trustees have a right of subrogation against the tortfeasor. Plaintiff further argues that he could have refused the uninsured motorist coverage, and he also argues that he paid approximately $19,000.00 in attorney's fees and costs to create the right of recovery against his uninsured motorist coverage. Thus, plaintiff argues that the actions of the Trustees were arbitrary and capricious because he is being penalized for paying for the uninsured motorist coverage.
 
 
 20
 Plaintiff's argument is meritless. Although the Trustees may have a right of subrogation against the tortfeasor, Vernon, that right is illusory in this case. As acknowledged by plaintiff, tortfeasor Vernon is uninsured and has essentially no assets against which a recovery could be sought. This is the very reason why plaintiff recovered pursuant to his uninsured motorist coverage.
 
 
 21
 Moreover, although plaintiff argues that it was arbitrary and capricious for the Trustees to "seize" part of his recovery from his uninsured motorist coverage, this ignores the fact that the Trustees had already advanced $18,165.04 from the pension fund on plaintiff's behalf. Plaintiff notes that he spent $19,000.00 in attorney's fees and costs in recovering $50,000.00 pursuant to his uninsured motorist coverage. This leaves plaintiff with a recovery of approximately $31,000.00. According to plaintiff, it is arbitrary and capricious for the Trustees to "seize" $18,165.04 of this $31,000.00, thereby further reducing the amount of his recovery. However, plaintiff's argument ignores the obvious fact that the $18,165.04 allegedly "seized" by the Trustees is reimbursement for $18,165.04 in plaintiff's medical expenses paid by the Health and Welfare Fund. If the Health and Welfare Fund had not paid the $18,165.04 in medical expenses, plaintiff would have had to pay those moneys out of his net $31,000.00 recovery. Thus, plaintiff is really arguing that the Trustees' action is arbitrary and capricious because they are not allowing him a double recovery.
 
 
 22
 Furthermore, plaintiff's argument ignores the fiduciary duty imposed by ERISA on trustees of employee benefit plans. Courts have interpreted 29 U.S.C. § 1104 as imposing an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation. See Adams v. Avondale Industries, Inc., 905 F.2d 943, 946 (6th Cir.), cert. denied, 111 S.Ct. 517 (1990).
 
 
 23
 In this case, the Trustees are acting as a reasonable and prudent person would act under the circumstances. Article XI, section 11.14 of the Active Plan Document clearly gives the Trustees a right to subrogation in this instance by providing:
 
 
 24
 In the event the Fund pays benefits for injury, illness or other loss, the Fund shall be subrogated to all rights of recovery the Covered Individual, his or her heirs, guardians, executors, or other representatives may have arising from such injury, illness or other loss. The rights of recovery to which the Fund shall be subrogated include, but are not limited to, rights against any person or entity that caused, contributed to, or is responsible for the injury, illness or other loss and rights under no fault, personal injury protection, financial responsibility, uninsured or underinsured insurance coverages as well as medical reimbursement insurance coverage not purchased by the Covered Individual.
 
 
 25
 J.A. 284. (emphasis added). Therefore, in this case, the Trustees expended $18,165.04 from the Health and Welfare Fund on plaintiff's behalf. Under the plan documents, they clearly have a right of subrogation against plaintiff's uninsured motorist coverage. Plaintiff has not argued that his recovery under his uninsured motorist policy did not fully compensate him for his losses. Therefore, the Trustees in seeking a right of subrogation against plaintiff have acted as would a reasonable person under the circumstances of this case. Moreover, in pursuing their subrogation rights against plaintiff's recovery from his uninsured motorist coverage, the Trustees have fulfilled their fiduciary duties in a manner consistent with the clear language of their plan documents.
 
 
 26
 For the reasons stated above, we hold that the Trustees did not act in an arbitrary and capricious manner in pursuing their right to subrogation in this case. As noted above, a reasonable explanation exists for the Trustees' actions, namely, they acted in accordance with the provisions of the plan documents, and in the absence of an argument to the contrary by defendant, it does not appear that plaintiff will not be made whole for his injuries if defendant Health and Welfare Plan obtains reimbursement for its expenditures on plaintiff's behalf. Therefore, since the defendant acted reasonably, no genuine issue of material fact existed, and summary judgment was properly granted.
 
 III.
 
 27
 For the reasons stated, the district court's grant of summary judgment in favor of defendant is AFFIRMED.