Allen LIVINGSTON and Barbara Livingston, Plaintiffs,

v.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, Defendant.

Civ. A. No. 94–73907.

United States District Court, E.D. Michigan, Southern Division.

Sept. 13, 1995.

David Machnacki, Russell N. Luplow Assoc., Bloomfield Hills, MI, Francis J. Carey, Central States Southeast and Southwest Areas Fund, Law Department, Des Plaines, IL, for Central States, Southeast and Southwest Areas Health and Welfare Fund.

Jerome S. Coleman, Coleman, Lipson & Bradford, P.C., Farmington Hills, MI, for Teamsters L299.

Allen J. Lippitt, Riley & Roumell, Detroit, MI, for Barbara Livingston.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Plaintiffs Allen and Barbara Livingston are seeking medical benefits from defendant Central States, Southeast and Southwest Areas Health and Welfare Fund ("Fund"), administered pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). Three motions are currently before this court: (1) plaintiffs' motion for summary judgment; (2) defendant's motion to dismiss and strike; and (3) defendant's motion for summary judgment.

### I. Facts

The Fund is a Taft–Hartley Trust subject to the provisions of ERISA. The Fund is administered by a Board of Trustees with equal representation from labor and management. Presently there are four Employee Trustees and four Employer Trustees. Since February 1, 1976, the Fund has been self-funded for all medical and hospital benefits. Employees become participants of the Fund when their employer, pursuant to the terms of a Teamster collective bargaining agreement, makes contributions on their behalf to the Fund so that the employees and their dependents become eligible for medical coverage.

Plaintiffs Allen and Barbara Livingston are entitled to medical benefits from the Fund based upon contributions made by Allen Livingston's employer. On May 11, 1993, Dr. Richard L. Yukl performed surgery on Barbara Livingston at Swedish Medical Center in Inglewood, Colorado. Subsequently, plaintiffs sought payment for Barbara Livingston's medical bills from the Fund. The Fund determined that Barbara Livingston's surgery was "cosmetic" and denied the Livingston's claims because cosmetic surgery is not covered by the Fund's plan. The Fund provides participants and beneficiaries with the opportunity to contest a denial of claims through three levels of appeal. Plaintiffs submitted their appeal through all three levels and were consistently denied benefits.

According to plaintiffs, Barbara Livingston's surgery was not cosmetic. In their motion for summary judgment, plaintiffs state that Barbara Livingston saw Dr. Yukl on April 2, 1993, when she complained of gastric acidity, bleeding, and stomach pain. After taking a history and physical examination of Barbara Livingston, Dr. Yukl recommended she undertake an upper GI barium study and an endoscopic procedure to ascertain the nature of her problems. Barbara Livingston informed Dr. Yukl that she had undergone a gastric exclusion operation (obe-

sity surgery) on December 23, 1981. Dr. Yukl suspected that the stapling from her obesity surgery had torn apart due to the fact that Barbara Livingston had gained a significant amount of weight during the latter part of the 1980's and into the 1990's. Barbara Livingston visited Dr. Deffenbaugh on April 19, 1993 in Missouri and he recommended the same endoscopic procedure which Dr. Yukl had recommended. Dr. Deffenbaugh took tissue samples from Barbara Livingston for the purposes of biopsies. His reports were sent to Dr. Yukl.

During his deposition, Dr. Yukl testified that his original suspicions were incorrect and that the source of Barbara Livingston's bleeding and gastritis was from a different area of her body. Dr. Yukl testified that the endoscopy and biopsy revealed a condition known as Barrett's esophagus and the presence of two ulcers in the lower part of her stomach.

On May 11, 1993, Dr. Yukl operated on Barbara Livingston. At his deposition, Dr. Yukl testified that since he was going to operate on Barbara Livingston for her critical problems, he would also correct any existing or potential problems from the 1981 procedure. He thought that this would be a "nice thing to be able to do for her." According to Dr. Yukl's deposition, he did not charge her for the extra procedure. At his deposition, Dr. Yukl also testified that Mrs. Livingston enjoyed the thought of being able to lose weight again and the gastroplasty that Dr. Yukl performed enabled her to lose weight. Yukl Dep. at 38. On May 20, 1993, Barbara Livingston underwent a second surgical procedure with Dr. Yukl due to complications from the May 11, 1993 surgery.

The Fund argues that the surgery was an effort to correct complications of the 1981 obesity surgery and therefore is not covered by the Fund's medical plan. Dr. Yukl's May 11, 1993 operative note stated that Dr. Yukl had performed a "revision of gastrojejunostomy (take down) with conversation to a vertically banded gastroplasty." A liver biopsy was also performed. According to the affidavit of Albert Nelson, Benefit Services Director for the Fund, neither the Livingstons nor any medical service provider sought a predetermination from the Fund to determine if the service would be paid by the Fund's plan. According to Nelson, when the Fund received the bills for the May 11, 1993 and May 20, 1993 surgeries, one of the Fund's medical consultants advised that the surgeries were not covered by the plan. The Livingstons appealed the denial of their claims. On August 30, 1993, Dr. Yukl wrote to the Fund that the two surgeries were not related to Barbara Livingston's obesity. Dr. Yukl's office manager, Barb Cahill, also wrote to the Fund, stating that Barbara Livingston's surgery was not performed because of obesity. According to Nelson, on October 21, 1993, the medical records were again brought to a medical consultant. The consultant suggested payment for the liver biopsy but denial of the rest of the claims.

On November 29, 1993, Barbara Livingston wrote to the Fund and argued that her bills were payable because her surgery was for treatment of bleeding ulcers. Dr. Hamilton of Missouri wrote a note to the Fund, stating that Barbara Livingston's gastric ulcers were stress induced and that she was a chronically depressed patient. On November 30, 1993 Dr. Yukl wrote the Fund Level II Claim Appeals Committee and stated that Mrs. Livingston had undergone a gastrojejunostomy in 1981, had a history of gastritis, and more recently had developed bleeding. He stated that the Fund's conclusion that her 1993 surgery was undertaken as a result of prior obesity surgery was incorrect because she had the surgical procedure based on a peptic condition.

After the Livingstons submitted their Level II Claim Appeal, Dr. Buckingham, a medical consultant for the Fund, noted that Barbara Livingston's procedure was not medically necessary. Dr. Buckingham reviewed the operative notes and stated, "The OR note of 5/11/93 clearly identifies this procedure as a complication of a previous non-covered procedure. He cannot change the nature of the procedure by denying the obvious fact that the surgery was for a complication of prior banded gastric operation." On January 19, 1994, the Level II Claim Appeals Committee denied the Livingston's appeal, stating that the Fund' plan would not pay for treatment

connected with surgery for obesity purposes because the operation was cosmetic in nature and not covered by the plan. Mr. Livingston was advised that he could appeal the denial to the Level III Claims Appeal Committee.

In March 1994, Mr. Livingston filed a Level III Claim Appeal, arguing that the Level II Committee ignored the information provided by Dr. Yukl in the August 30 and November 30, 1993 letters. He argued that his wife's surgery had nothing to do with obesity. On May 12, 1994 the Trustees of the Fund reviewed the administrative appeal. Their minutes noted that the operative records submitted to the Fund showed that on May 11, 1993, two procedures were performed upon Mrs. Livingston, a takedown of the prior gastrojejunostomy with a conversion to a vertical banded gastroplasty and a liver biopsy. The minutes noted that a medical consultant recommended that a $1,0000 charge for the liver biopsy be paid and that the other charges be denied as complications of a 1981 non-covered surgery for obesity. According to the minutes, the Fund paid the $1,000 toward the liver biopsy. The minutes also noted that Dr. Yukl stated that Mrs. Livingston had surgery for obesity in 1981, she had a history of gastritis and recently developed bleeding. Further, the minutes noted that Dr. Buckingham reviewed the records and recommended that the surgery was not payable. However, as a result of an error, $3,072.90 of the pending charges were paid by mistake. The appeal was denied based on the record presented to the Trustees. The Trustees then wrote Mr. Livingston informing him that his administrative claim appeal was denied. The letter advised him of the relevant plan provisions and stated that, "it was determined that the surgeries were the result of complications from a previous cosmetic procedure."

On September 28, 1994, plaintiffs filed a complaint against the Fund and International Brotherhood of Teamsters, Local 299, asking for a declaratory judgment under 28 U.S.C. § 2201 that the Teamsters and the Fund breached the health and welfare plan between the Livingstons and the Teamsters. The plan was administered by the Fund. On December 7, 1994, defendant International Brotherhood of Teamsters, Local 299 was dismissed as a party defendant to this action by order of the court at the request of plaintiffs.

## II. Analysis

Three motions are currently before this court: (1) plaintiffs' motion for summary judgment; (2) defendant's motion to dismiss and strike; and (3) defendant's motion for summary judgment. The court will first address defendant's motion to dismiss and strike. Then the court will address the cross-motions for summary judgment.

## I. Defendant's Motion to Dismiss and Strike

The Fund argues that plaintiffs' complaint should be dismissed because plaintiffs' claim for medical benefits is preempted by ERISA. The Fund also argues that if the court determines that plaintiffs' claim is preempted by ERISA, then plaintiffs' claim for punitive damages should be stricken because ERISA does not permit recovery of punitive damages.

### A. ERISA Preemption

ERISA provides for comprehensive regulation of employee benefit plans. 29 U.S.C. §§ 1002, 1003. It contains an express provision that preempts state law claims that relate to a benefit plan. *Id.* § 1144. Section 1144(a) provides as follows:

Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan.

*Id.* (emphasis added). Section 1144(b) is a savings clause that exempts certain state laws from the preemptive effect of section 1144(a). State laws that "regulate[ ] insurance, banking, or securities" are not preempted by ERISA. *Id.* § 1144(b)(2)(A). When the employee benefit plan is self-funded, such as the plan in this action, it is not subject to state regulation of insurance. *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

The court finds that plaintiffs' state law claims seeking medical benefits are

preempted by ERISA. Plaintiffs' complaint seeks a declaratory judgment on a breach of contract claim. It is clear that plaintiffs' claim "relates to" the Fund's employee benefit plan, regulated by ERISA. The Supreme Court has given wide preemptive effect to the "relate to" language of section 1144(a). *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990); *Cromwell v. Equicor Equitable HCA Corp.,* 944 F.2d 1272, 1275 (6th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992). Under this standard, plaintiffs' state law claim against the Fund is preempted by ERISA. *McDuffey v. Michigan Conference of Teamsters Welfare Fund,* 872 F.Supp. 402, 407 (E.D.Mich.1994) (state law claims seeking recovery of medical benefits were preempted by ERISA).

 The Fund argues, in its motion to dismiss, that plaintiffs' complaint does not allege a jurisdictional basis under ERISA and therefore must be dismissed. The exclusive remedy for a participant seeking recovery of benefits denied by an ERISA-governed plan is provided by ERISA, 29 U.S.C. § 1132(a)(1)(B). *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). Section 1132(a)(1)(B) provides:

A civil action may be brought

(1) by a participant or beneficiary

(A) for the relief provided in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of this plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan.

*Id.* In their response, plaintiffs admit that they did not specifically state that ERISA is their basis for jurisdiction. However, plaintiffs argue that "the issue presented by the complaint is clearly one to be decided by ERISA standards." All the briefs filed by plaintiffs are based on case law interpreting ERISA. The parties have thoroughly briefed the issues under ERISA. Therefore, the court will construe plaintiffs' complaint as alleging a claim under 29 U.S.C. § 1132(a)(1)(B).

### B. Punitive Damages

 Plaintiffs' complaint seeks punitive damages against defendant. As discussed above, plaintiffs' state law claims are preempted by ERISA. Plaintiffs cannot recover punitive damages under ERISA. *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The Sixth Circuit concluded that "there can be no extra contractual recovery in the context of an ERISA plan." *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 696 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990). Therefore, the court will dismiss plaintiffs' claim for punitive damages.

## II. Motions for Summary Judgment

### A. Standard of Review

 Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

 The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated.

The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

 To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings. *Id.*

## B. Standard of Judicial Review of Trustees' Decision

 If an employee benefits plan gives a plan administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, then a district court reviews the decision to deny benefits under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).[1] The court must therefore determine whether the terms of the Central States Trust Agreement ("Trust Agreement") contain sufficient discretionary grants of authority to the Trustees to require the court to review their decision under the arbitrary and capricious standard. Article IV, Section 1 of the Trust Agreement states:

> The Trustees shall have authority to control and manage the operation and administration of the Trust in accordance with applicable law.

Additionally, the Trust Agreement provides the Trustees with the following authority:

> The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust, provided the same are not inconsistent with the terms of the Agreement, and the Articles in the Central States, Southeast and Southwest Areas Agreements creating the Health and Welfare Fund. All rules and regulations adopted by the action of the Trustees for the administration of the Trust Fund shall be binding upon all parties hereto, all parties dealing with the Trust, and all persons claiming any benefits hereunder. The Trustees are vested with discretionary and final authority in adopting rules and regulations for the administration of the Trust Fund.

Trust Agreement, Article IV, Section 9.

> The Trustees by majority action, shall have the power to construe the provisions of this Agreement and the terms and regulations of the Health and Welfare Plan; and any construction adopted by the Trustees in good faith shall be binding

---

**1.** The Fund also cites *Gardner v. Central States, Southeast and Southwest Areas Pension Fund*, 14 F.3d 601, 1993 WL 533540 unpublished, (6th Cir. Dec. 21, 1993) for this proposition.

upon the Union, Employees and Employers. The Trustees are vested with discretionary and final authority in construing plan documents of the Health and Welfare Fund.

Trust Agreement, Article IV, Section 17.

All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof, whether as to any claim for any benefits preferred by any participant, beneficiary, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or instrument, or as to any writing decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees or of such committee thereof shall be binding upon all persons dealing with the Fund or claiming any benefit thereunder. The Trustees are vested with discretionary and final authority in making all such decisions including Trustee decisions upon claims for benefits by participants and beneficiaries of the Fund and including Trustee decisions construing plan documents of the Fund. To the extent this section is contrary to or inconsistent with any agreement between the Fund and an investment manager, this section shall be inapplicable.

Trust Agreement, Article V, Section 2.

The court finds that the Trust Agreement clearly grants the plan administrators, the Trustees, discretion in interpreting the language of the plan and the eligibility for benefits under the plan. In *Bowen v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 961 F.2d 1576, 1992 WL 92832, unpublished (6th Cir. May 6, 1992), the Sixth Circuit held that this Trust Agreement grants the plan administrators, the Trustees, discretion in interpreting the language of the plan and the eligibility for benefits under the plan. Therefore, the Sixth Circuit upheld the district court's finding that the arbitrary and capricious standard applied to the case. In *Exbom v. Central States, Southeast and Southwest Areas*

*Health and Welfare Fund,* 900 F.2d 1138, 1142–1143 (7th Cir.1990) and *Collins v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 18 F.3d 556 (8th Cir.1994), the Seventh and Eighth Circuits also held that this Trust Agreement provides sufficient discretionary authority to the Trustees to require the court to review the decision under the arbitrary and capricious standard. This court must therefore determine whether the Trustees' interpretation of the plan was arbitrary and capricious. .

### C. Denial Of Benefits

 Under the arbitrary and capricious standard of review, an administrator's decision will be overturned only upon a showing of internal inconsistency, bad faith or some other ground for calling such determinations in to question. *Davis v. Kentucky Finance Co. Retirement Plan,* 887 F.2d 689, 695 (6th Cir.1989). If the plan administrator's evaluation or interpretation has a rational basis, a court reviewing the determination under the arbitrary and capricious standard should not disturb that determination. *Hanser v. Ralston Purina Co.,* 821 F.Supp. 473, 477 (E.D.Mich.1993).

 The terms of the plan provide that the plan will not pay any claim for benefits "unless the benefits are provided by the Plan." Central States, Southeast and Southwest Areas Health and Welfare Fund Active Plan Document, Section 4.01. One of the limitations of the plan is that the plan will not pay for treatment connected with surgery for cosmetic purposes:

The plan shall not pay any charge incurred for treatment or service connected with surgery performed for cosmetic purposes, even if performed for psychological reasons, unless the treatment or service is medically required as a result of accidental bodily injury.

This limitation includes, but is not limited to:

(a) Surgery for obesity, including gastric bypass, gastric stapling, intestinal bypass, lipectomy, suction lipectomy, and any other surgical procedure the purpose and result

of which is primarily to remove adipose tissue, . . .

Central States, Southeast and Southwest Areas Health and Welfare Fund Active Plan Document, Section 4.09. The plan also contains a limitation stating that it will not pay any charges incurred for treatment of complications arising from the performance of any procedure not compensable under the plan. Central States, Southeast and Southwest Areas Health and Welfare Fund Active Plan Document, Section 4.13. The Summary Plan Description states that the Plan does not cover "treatment or services for complications of medical, dental, or vision procedures which are not covered by the Plan." Finally, the plan provides that "the Fund reserves the right to question any charge or procedure and to have the same professionally reviewed to determine if it is covered under the Plan." Central States, Southeast and Southwest Areas Health and Welfare Fund Active Plan Document, Section 11.13.

■■■ The Trustees determined that the May 11, 1993 operation was a repair of a prior weight loss operation as well as a new weight loss operation. At the time of the review process, the Trustees had before them the hospital bills, Dr. Yukl's operative notes, Dr. Deffenbaugh's operative notes, the pathology report, the letters written by Dr. Yukl and his office manager, the arguments made by Mrs. Livingston and the opinion of the Fund's medical consultants. The court must examine whether the Trustees' decision to deny the Livingston's medical claims was arbitrary and capricious by examining the record which was before the Trustees at the time the determination was made. *Crews v. Central States, Southeast and Southwest Areas Pension Fund,* 788 F.2d 332, 336 (6th Cir.1986); *Oldenburger v. Central States, Southeast and Southwest Areas Pension Fund,* 934 F.2d 171, 174 (8th Cir.1991). Dr. Buckingham, the Fund's medical consultant, stated that the procedure did not appear to be medically necessary. Dr. Yukl's operative notes from the May 11, 1993 operation include the following relevant information:

DATE OF OPERATION: 05/11/93

PREOPERATIVE DIAGNOSIS: Gastric ulceration with bleeding in a patient with a prior gastrojejunostomy.
POSTOPERATIVE DIAGNOSIS: Same.
OPERATIONS:
1. Revision of gastrojejunostomy (takedown) with a conversion to a vertically banded gastroplasty.
2. Excisional liver biopsy, left lobe of liver.

Dr. Yukl's operative notes from the May 20, 1993 operation include the following relevant information:

DATE OF OPERATION: 05/20/93
PREOPERATIVE DIAGNOSIS: Obstruction of upper pouch of vertically banded gastroplasty by previously placed, but not disrupted, staple line from earlier gastric bypass procedure.
POSTOPERATIVE DIAGNOSIS: Same.
OPERATIONS:
1. Revision gastrogastrostomy.
2. Tube gastrostomy to lower pouch of vertically banded gastroplasty stomach.

After reviewing the operative notes and other records, Dr. Buckingham determined that the operative note clearly identified the May 11, 1993 operation as a complication of a previous non-covered procedure. Dr. Buckingham's report states that Dr. Yukl "cannot change his mind about the procedure by denying the obvious fact that the surgery was for a complication of prior" obesity surgery.

The parties argue whether plaintiffs informed the Fund that the surgery was to correct a precancerous condition. Plaintiffs present Dr. Yukl's deposition testimony to support their argument. However, Dr. Yukl's deposition testimony was taken on March 22, 1995. The final appeal in this case was heard by the Trustees on May 12, 1994. Dr. Yukl's deposition was not before the Trustees at the time of their decision. The Fund has attached an affidavit from Dr. Buckingham, dated April 27, 1995, in which he states that even after examining Dr. Yukl's deposition he would find that the procedure was not covered by the plan and that surgery was not the appropriate medical treatment for Barbara Livingston's alleged

condition. Plaintiffs contest the court's use of Dr. Buckingham's affidavit. The court will only consider whether the evidence before the Trustees was sufficient to provide a reasonable basis for their decision.

Plaintiffs argue that the Fund's denial of benefits was arbitrary and capricious because the Fund ignored evidence, such as Dr. Yukl's letters, which clearly conflicted with Dr. Buckingham's recommendations. Plaintiffs further argue that the Fund should have conducted a more thorough investigation of plaintiffs' claims after having seen the conflict in the record. Plaintiffs admit that Dr. Yukl performed an obesity procedure on Mrs. Livingston, but they argue that Dr. Yukl did not charge for this portion of the operation. Instead, plaintiffs argue that the surgery was for a precancerous gastric condition and ulcers. Plaintiffs also argue that all of the surgical charges on the billing claim forms, with one exception make reference to ulcers, gastritis, and gastric ulcer. Plaintiffs maintain that the Trustees could not have reached an intelligent and informed decision on the basis of the information before them.

The situation in this case is similar to the denial of benefits in *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138 (7th Cir.1990). In *Exbom*, the plaintiff was morbidly obese and was unsuccessful in attempts to lose weight by dieting. The doctors recommended a gastric stapling operation which would lead to weight loss and improve her physical condition. She sought to have the Fund pay for the operation but the Trustees, based upon plan limitations, including the cosmetic limitation, denied her claim. *Id.* at 1139. Plaintiff appealed through the same process used by the Livingstons. During that process, plaintiff's claim was reviewed by Dr. Buckingham. He felt that the purpose of her proposed weight reduction surgery was cosmetic and not medically necessary. The Seventh Circuit upheld the Fund's denial of benefits. Similarly, in the instant case, Dr. Buckingham has reviewed the medical records and has provided a reasonable basis for the Fund's denial of benefits.

Plaintiffs argue that in *Exbom*, the Trustees gathered substantial information, obtained outside experts, interviewed the treating doctors and then reached their decision. The plaintiffs state that the Fund should have also investigated their claims by interviewing Barbara Livingston's doctors and examining her. The administrative procedures followed by the Trustees in *Exbom* were substantially similar to those followed in this case. There is nothing in *Exbom* which required Dr. Buckingham to personally interview the patient's doctors or do anything more than he has done in this action. Plaintiffs cite *McLaughlin v. Connecticut General Life Ins. Co.*, 565 F.Supp. 434, 435 (N.D.Cal.1983) to support their argument that trustees must thoroughly investigate a claim in order to discharge fiduciary duties. However, the court in *McLaughlin* found that there was no ERISA preemption of plaintiffs' state law claims and then decided the action under state law. In the instant case, the court can only overturn the Fund's interpretation of the plan if it was arbitrary and capricious. Dr. Buckingham reviewed Barbara Livingston's hospital bills, Dr. Yukl's operative notes, Dr. Deffenbaugh's operative notes, the pathology report, the letters written by Dr. Yukl and his office manager and the arguments made by Mrs. Livingston. The Livingstons had three opportunities to appeal the denial of claims and provide the Fund with additional information. An independent medical expert's review of the appropriate records may provide a reasonable basis for an ERISA plan's decision to deny benefits. *Michael Reese Hospital & Medical Center v. Solo Cup Employee Health Benefit Plan*, 899 F.2d 639, 641 (7th Cir.1990). Dr. Buckingham has been referred to by other courts as well qualified and his consultations have been the basis of upholding several decisions by the Fund to deny benefits. *See Strader v. Central States*, 1987 WL 45087 (W.D.Mo.1987); *Berry v. Central States*, No. CIV–1–86–004, slip op. (E.D.Tenn. Jul 22, 1986); *McGinnis & Sondregger v. Central States*, No. 89–6082–CV–SJ–8, slip op. (W.D.Mo. March 4, 1991); *Smith v. Central States*, No. 89–6082–CV–91–1621–A, slip op. (W.D.Okla. Feb. 10, 1992). Further, Dr. Buckingham was the

second medical consultant to recommend denial of plaintiffs' claims. In Nelson's affidavit, he states that Dr. Flanagan made the initial review of the bills when they were received by the Fund.

The court finds that the Fund had a reasonable basis for the denial of plaintiffs' claims. When there are conflicting opinions, the Fund must choose one opinion. Dr. Buckingham's opinion was reasonably based on sufficient evidence. The fact that the Fund found Dr. Buckingham's opinion more persuasive than plaintiffs' and their doctors' opinions does not prove that the Trustees' decision was arbitrary or capricious.

Plaintiffs argue that the Fund's denial of benefits was not supported by a good faith interpretation of their claim. The court finds that there was clearly no bad faith in the denial of plaintiffs' claims. The claims were reviewed three separate times by three appeals committees and two medical consultants. The Fund is a tax-exempt employee benefit plan. It is not an insurance company, has no shareholders, and earns no profits. The Board of Trustees includes four employees as well as four employers. ERISA Trustees are restrained by the fiduciary duties to protect the assets of the trust for the benefit of all participants and beneficiaries of an employee benefit plan. Section 404(a)(1)(D) of ERISA requires a fiduciary to act "in accordance with the documents and instruments governing the Plan." 29 U.S.C. § 1104(a)(1)(D). The Trustees have no conflict of interest because their decision in denying payment for Mrs. Livingston's surgery does not result in any savings for themselves or investors. The Seventh Circuit called these Trustees "impartial judges." *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1143 (7th Cir.1990). The court fails to find any bad motive or bad faith from the thorough review process provided to the plaintiffs.

Lastly, plaintiffs seek attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(1). That section of ERISA provides that a court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

In this case, the court will not grant plaintiffs' request.

### ORDER

Therefore, it is hereby **ORDERED** that plaintiffs' motion for summary judgment is denied.

It is further **ORDERED** that defendant's motion to dismiss plaintiffs' complaint is **DENIED.**

It is further **ORDERED** that defendant's motion to dismiss plaintiffs' claim for punitive damages is **GRANTED.**

It is further **ORDERED** that defendant's motion for summary judgment is **GRANTED.**

**SO ORDERED.**