Hope BOND,

v.

TRUSTEES OF THE STA–
ILA PENSION FUND.

Civ. No. K–95–1338.

United States District Court,
D. Maryland.

Oct. 18, 1995.

Edward L. Blanton, Jr., Baltimore, Maryland, for plaintiff.

Christine Williams, and Abato, Rubenstein & Abato, P.A., Baltimore, Maryland, for defendants.

### MEMORANDUM AND ORDER

FRANK A. KAUFMAN, Senior District Judge.

(1) Reference is hereby made to plaintiff's motion for summary judgment, defendants' cross-motion for summary judgment and all other filings in this case. For the following reasons, this Court will grant defendants' motion and deny plaintiff's motion.

(2) Plaintiff Hope A. Bond ("Ms. Bond") brought the instant action in the Circuit Court for Baltimore City. In her complaint, Ms. Bond seeks a declaratory judgment that, inter alia, she will become entitled to benefits under the STA–ILA Pension Fund ("the Plan") on December 1, 2001. Defendants, the Trustees of the STA–ILA Pension Fund ("the Trustees"), removed the case to this Court.

(3) The relevant facts are not in dispute: The STA–ILA Pension Fund ("the Plan") is a qualified employee pension plan, as defined by ERISA, 29 U.S.C. § 1002(2).[1] The plan sponsor, as defined by ERISA, 29 U.S.C. 1301(a)(10), is a joint board of trustees appointed in equal numbers by the Steamship Trade Association of Baltimore, Maryland and the International Longshoremen's Association.[2] The Plan includes a provision which states:

> If at the time of your death you were vested and had not yet retired, your surviving spouse is automatically paid a preretirement Husband-and-Wife Death Benefit payable in the form of a Husband-and-Wife Pension ...

---

**1.** See Affidavit of Stephen M. Byan, Co–Administrator, STA–ILA Pension Fund at ¶ 3.

**2.** See Byan affidavit at ¶ 3.

If you were younger than age 50 on the date of your death, the preretirement Husband-and-Wife Death Benefit is payable to your surviving spouse on the first day of the month in which you would have reached age 50 had you lived....

For the preretirement Husband-and-Wife Death Benefit to be effective, you and your spouse must have been married to each other for at least a one-year period ending on or before your date of death.[3]

Clarence A. Bond ("Mr. Bond"), the deceased husband of plaintiff Hope A. Bond ("Ms. Bond"), was a participant in the STA–ILA Pension Fund.[4] Mr. Bond was born on December 1, 1951.[5] Mr. Bond and Ms. Bond lived together for many years, and on June 10, 1994, they were married.[6] On September 18, 1994, Mr. Bond died.[7]

Following her husband's death, Ms. Bond asked the Trustees whether she would be eligible for the preretirement survivor annuity as of the date upon which Mr. Bond would have turned 50. The Trustees advised Ms. Bond that she would not be eligible because she and Mr. Bond had not been married to each other for one year prior to Mr. Bond's death.[8] Ms. Bond thereafter brought the instant action.

■■■ (4) Summary judgment is appropriate where "there is no genuine issue of material fact and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir.1984). The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." Felty v. Graves–Humphreys Co., 818 F.2d 1126, 1129 (4th Cir.1987). Any party resisting summary judgment must "go beyond the pleadings and by [its] own affidavits, and admissions on file, designate specific facts showing that there is

a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■■■ (5) As a preliminary matter, this Court finds this case to be ripe for adjudication. Defendants note that any annuity to which Ms. Bond is entitled would not be due and payable until December 1, 2001. If Ms. Bond were to fail to live until December 1, 2001, the date upon which Mr. Bond would have reached 50 years of age if he had survived until that date, there would be no qualifying payee. The contingent nature of the annuity, however, does not end the inquiry. Ripeness turns on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). Both of these factors counsel in favor of finding this case ripe for adjudication. The question of Ms. Bond's entitlement to benefits is predominantly a legal inquiry, and this Court can envision no likely future factual developments which would clarify this question. This case is therefore fit for judicial decision. Moreover, deferral of this case may create a hardship by hindering the parties in their financial planning.

■■■ (6) In some cases, courts conduct de novo review of trustee interpretations of the terms governing a qualified ERISA plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989). Where the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, however, courts instead will apply an abuse of discretion standard. Id. at 111 & 115, 109 S.Ct. at 954 & 956. Under an abuse of discretion standard,

3. Byan Affidavit at ¶ 4 (making reference to excerpt from Summary Plan Description).

4. See plaintiff's September 14, 1995 Memorandum in Support of Plaintiff's Motion for Summary Judgment at page 2.

5. See id.

6. See id.

7. See id.

8. See Complaint at ¶ 6.

"the trustee's determination will not be disturbed if reasonable." *Id.* at 111, 109 S.Ct. at 954; *accord de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187 (4th Cir.1989).

◼ Here, the agreement that governs the Plan provides that:

All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Pension Fund or the operation thereof, whether as to any claim for any benefits made by the Employee, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or this Agreement, or as to any writing, decision, instrument or accounts in connection with the operation of the Fund or otherwise, shall be submitted to the Board of Trustees for decision, and the decision of the board, if made in good faith, shall be binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder, subject where applicable to the appeal procedure....[9]

This broad grant of authority is sufficient to give the Trustees discretion to interpret the terms of the plan. This Court therefore will not disturb the Trustee's ruling unless it is unreasonable or not made in good faith.

◼ This Court concludes that the Trustees' interpretation was reasonable and made in good faith. The Trustees simply interpreted the term "married" in the Plan to mean "legally married." In Maryland, and in the large majority of jurisdictions in the United States, to be legally married, one must take part in an official proceeding.[10] Plaintiff and Mr. Bond were legally married in Maryland for only three months and eight days, less than the full year required under the Plan for eligibility for the Husband-and-Wife Death Benefit. Under those circumstances, this Court cannot say that the interpretation of the Trustees was not reasonable. Furthermore, plaintiff has submitted no filing, pursuant to Federal Civil Rule 56, which suggests that the Trustees did not act in

good faith. Accordingly, this Court upholds the interpretation of the Trustees.

◼ (7) Plaintiff contends that ERISA pre-empts Maryland marriage law because, she argues, ERISA requires that beneficiaries be treated uniformly in every state, regardless of the prevailing law of marriage. She contends that the "crowning achievement" of ERISA was to establish a body of federal common law which applies to retirement plans uniformly nationwide. Therefore, plaintiff contends, the meaning of the word "married" is a question of federal common law.

ERISA does not specifically define the term "married." It simply provides that qualified pension plans "*may* provide that a qualified joint and survivor annuity ... will not be provided unless the participant and spouse had been married throughout the 1-year period ending on the earlier of (A) the participant's annuity starting date, or (B) the date of the participant's death." 29 U.S.C. § 1055(f) (emphasis supplied).

◼ Plaintiff correctly notes that ERISA broadly pre-empts and supersedes state law:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.... Congress used the words 'relate to' in [29 U.S.C. § 1144(a)] in their broad sense." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97–98, 103 S.Ct. 2890, 2899–900, 77 L.Ed.2d 490 (1983); *accord Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 45–47, 107 S.Ct. 1549, 1551–1552, 95 L.Ed.2d 39 (1987). The Supreme Court has also warned, however, that even under

---

**9.** Byan Affidavit at ¶ 5.

**10.** *See* Ellen Kandoian, *Cohabitation, Common Law Marriage, and the Possibility of a Shared*

*Moral Life,* 75 Geo.L.J. 1829, 1831 n. 11 (1987) (noting that only fourteen jurisdictions recognize common law marriage).

ERISA claims, we "must presume that Congress did not intend to pre-empt areas of traditional state regulation." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

In the instant case, the definition and regulation of marriage is a traditional area of state authority. Following the approach of *Metropolitan Life,* this Court will presume that Congress did not intend to pre-empt this area of law. Plaintiff has provided no authority to rebut this presumption, nor has plaintiff provided this Court with authority suggesting what the "federal common law of marriage" would be.

■ Furthermore, as discussed *supra,* the Plan vests discretion in the Trustees to interpret the terms of the Plan. Even if ERISA pre-empted the Maryland definition of marriage, the Trustees would seemingly still retain discretion to interpret the language of the plan. This Court will not, therefore, in this case, create a federal common law definition of "married" and thereby undermine the discretionary authority of the Trustees.

■ (8) Plaintiff apparently contends that the Trustees' ruling violates Art. 4, § 10 of the Baltimore City Code, which prohibits certain employment practices to the extent they discriminate on the basis of marital status.[11] However, to the extent that that section of the Baltimore City Code applies in the instant case, it is pre-empted by ERISA. As discussed *supra,* courts have construed the ERISA pre-emption provision broadly. The Baltimore ordinance, if construed as argued by plaintiff, would directly proscribe certain types of pension plan provisions, i.e. the one-year period requirement. Were the ordinance to forbid such marriage requirements within pension plans, it would be well within the type of provision which ERISA's framers intended to pre-empt. *See Shaw,* 463 U.S. at 95–100, 103 S.Ct. 2890. Moreover, plaintiff's allegations hardly constitute a sufficiently significant type of "difference in the treatment of an individual person because of . . . marital status" which, as plaintiff notes, the ordinance was designed to prohibit. Baltimore, Md., City Code, Art. 4, § 9(6) (1983 & 1994 Supp.). Plaintiff has not been denied benefits so much because of her marital status as because she was *not married* to Mr. Bond for the *requisite* period of time. That type of *distinction is common in* pension plans, and plaintiff has pointed to no instance in which a court has held a similar provision to violate an anti-discrimination statute.

(9) In a separate order of even date herewith, judgment will be entered for defendant.

(10) Copies of this Memorandum and Order are today being mailed to counsel of record.

(11) It is so Ordered this 18th day of October, 1995.

---

11. That statute provides, in relevant part, as follows:

> Except where a particular occupation or position reasonably requires, as an essential qualification thereof, the employment of a person or persons of a particular race, color, religion, national origin, ancestry, sex, age, physical or mental capability, marital status, or sexual orientation, and such qualification is not adopted as a means of circumventing the purpose of this subtitle, it shall be an unlawful employment practice:
>
> (1) For any employer to discriminate against an individual with respect to hire, tenure, promotion, terms, conditions, or privileges of employment or any matter directly or indirectly related to employment;
>
> \*　\*　\*　\*　\*　\*
>
> (5) For any labor organization to discriminate against any individual by limiting, segre-

gating, or classifying its membership in any way which would deprive or tend to deprive such individual of employment opportunities or would limit his employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment or would affect adversely his wages, hours, or employment conditions . . .

Baltimore, Md., City Code, Art. 4, § 10 (1983 & 1994 Supp.).

The statute defines "discrimination" to include, inter alia, "any difference in the treatment of an individual or person because of . . . marital status." Baltimore, Md., City Code, Art. 4, § 9(6) (1983 & 1994 Supp.).