Jerald **MEYER**, Plaintiff,

v.

**DULUTH BUILDING TRADES WELFARE FUND,**
Defendant.

**No. CIV 00–1176 RLE.**

United States District Court,
D. Minnesota.

June 21, 2001.

Thomas F. Andrew, Brown, Andrew, Signorelli & Zallar, Duluth, MN, for Plaintiff.

John H. Bray, Clure, Eaton, Butler, Michaelson, Ferguson & Person, Duluth, MN, for Defendant.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, made in accordance with the provisions of Title 28 U.S.C. § 636(c), upon the parties' Cross–Motions for Summary Judgment. A Hearing on the Motions was conducted on January 25, 2001, at which time, the Defendant Duluth Building Trades Welfare Fund ("Fund") appeared by John H. Bray, Esq., and the Plaintiff Jerald Meyer ("Meyer") appeared by Thomas F. Andrew, Esq. For reasons which follow, we grant the Fund's Motion for Summary Judgment.

II. *Factual and Procedural Background*

This is an action which arises under the Employee Retirement Income Security Act, Title 29 U.S.C. § 1132(a)(1)(B) ("ERISA"), which was commenced by Meyer, who is a participant in the Fund. Meyer seeks disability and medical benefits, from the Fund, for injuries he sustained when he fell while working at his wife's place of business, on September 23, 1999. By this action, Meyer seeks to set aside the Fund's decision to deny him benefits.

The parties have filed a Stipulation of Facts for the purposes of their Cross–Motions for Summary Judgment. As stipulated by the parties, Meyer's injury occurred while he was working at Bill's Café, which was purchased by his wife in July of 1999. Meyer's wife is the sole owner of Bill's Café and, as a result, Meyer had no ownership interest, rights, or obligations towards Bill's Café.[1]

Immediately prior to Meyer's accident, Meyer's wife asked him to measure the back wall of the Café so that she could determine the price of having that wall of the Café resided. While Meyer was measuring the back wall, he fell from a scaffold and was knocked unconscious. As a result of the fall, Meyer suffered a variety of injuries, including a serious brain injury, broken ribs, a broken wrist, and an injured vertebra. The parties concede that these injuries will prevent Meyer from returning to his trade as a plumber and pipefitter.[2]

After sustaining his injuries, on September 30, 1999, Meyer submitted a "Statement of Claim for Disability Benefits" to the Fund. On November 24, 1999, the Fund denied this claim, stating as follows:

> The basis for this denial can be found in your Summary Plan Description on page 41, # 2(c). Based on the information received, it appears that this should have been covered under the restaurant's workmen's compensation.

*Stipulation of Facts, Ex. B.*, at 2.

The Fund's denial of Meyer's claim for benefits was based upon the following exclusion, which is contained within the Fund's Summary Plan Description:

**EXCLUSIONS AND LIMITATIONS**

> Payment will not be made under any health benefit or Weekly Income Benefit of the Plan for the following:
>
> 2. Charges incurred in connection with:
>
> \* \* \* \* \* \*
>
> c. Any Accidental Injury or Sickness which would be covered under Workers' Compensation, or similar law, regardless of whether or not such insurance was in force and effect at the time of injury.

*Id., Ex. C.*, at 41.

In response to this denial, Meyer wrote to the Trustees of the Fund and advised that, at the time of his accident, he was between jobs, and had an unemployment insurance claim. *Id., Ex. B.*, at 3. In addition, Meyer wrote:

> I do not own any part of, or have any claim in the restaurant whatsoever. So I was not working for wages, profit or gain of any kind. I was not working at all. I was getting some measurements so that my wife could get an estimate

---

1. On September 23, 1999, when his accident occurred, Meyer was a member of Plumbers and Pipefitters Local 589 ("Local 589"), in Virginia, Minnesota. At the time, Local 589 was a participating local union, which was affiliated with the Fund. As such, Meyer was an "employee" whose employment was covered by a Collective Bargaining Agreement between a contributing employer and a participating local union.

2. As a result of the accident, Meyer has incurred medical expenses which total $60,318.55 for the treatment of his injuries, and he may incur additional medical expenses in the future.

from the lumber yard on redoing the back of the building.

*Id.*[3]

On February 11, 2000, Shirley Hanson, who is the Fund's Administrator, wrote the following to Meyer, in order to inform him of the Fund's reconsideration of his request for benefits:

> As stated in our letter of November 24, 1999, the claim was denied based on the information submitted regarding your injury. Please refer to page 41, # 2(c) in your Summary Plan Description Booklet. Even though this was denied by the restaurant's workers' comp carrier, it appears that the main reason for denial was that you, personally, are not covered by the work comp insurance. It does appear, however, that you could have been covered if you had so elected.

*Id.* at 5.

Meyer has exhausted all administrative remedies, which are available to him, in administratively appealing the Fund's denial of his claim for benefits. In this action, Meyer seeks to overturn the Fund's decision to deny his benefit claim.

## III. *Discussion*

A. *Standard of Review.* Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. *Krentz v. Robertson,* 228 F.3d 897, 901 (8th Cir.2000); *Curry v. Crist,* 226 F.3d 974, 977 (8th Cir.2000); *Carter v. St. Louis Univ.,* 167 F.3d 398, 400 (8th Cir.1999). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Herring v. Canada Life Assurance,* 207 F.3d 1026 (8th Cir. 2000); *Liebe v. Norton,* 157 F.3d 574, 578 (8th Cir.1998); *Dodd v. Runyon,* 114 F.3d 726, 729 (8th Cir.1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the ad-

---

**3.** Meyer also sent the Trustees a copy of a letter that his wife received from a representative of her worker's compensation insurer. In this letter, the representative explained the reason for Meyer's lack of coverage under her policy, as follows:

> Under Section 176.041 of the Workers' Compensation Statutes, coverage under Workers' Compensation is excluded for a sole proprietor or the spouse, parent and child regardless of age of the sole proprietor. Coverage, however can be elected for anyone of these individuals. From the information I have and in speaking with your agent, it would appear that Jerry Meyer, who I believe is your husband, is not an employee of Bill's Café. It is also noted that you have not elected coverage for yourself under the Workers' Compensation Policy. I don't see where coverage has been elected for Jerry Meyer.
>
> As such, it would appear there would be no coverage under the Workers' Compensation Policy as Jerry Meyer is not an employee and even if an employee-employer relationship existed, that no coverage was elected for him under the Workers' Compensation Policy.

*Stipulation of Facts, Ex. B.,* at 4.

verse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure;* see also, *Anderson v. Liberty Lobby, Inc.,* supra at 256, 106 S.Ct. 2505; *Allen v. Entergy Corp.,* 181 F.3d 902, 904 (8th Cir.1999); *Jaurequi v. Carter Manufacturing Co.,* 173 F.3d 1076, 1085 (8th Cir.1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* supra at 322, 106 S.Ct. 2548; see also, *Hammond v. Northland Counseling Center, Inc.,* 218 F.3d 886, 891 (8th Cir.2000); *Greer v. Shoop,* 141 F.3d 824, 826 (8th Cir.1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* supra at 323, 106 S.Ct. 2548; see also, *Bell Lumber and Pole Co. v. United States Fire Ins. Co.,* 60 F.3d 437, 441 (8th Cir.1995); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 510 (8th Cir.1995); *Settle v. Ross,* 992 F.2d 162, 163 (8th Cir.1993).

### B. *Legal Analysis.*

■ 1. *The Appropriate ERISA Standard of Review.* Before we address the substance of the Summary Plan Description, which governs the Fund's distribution of benefits, we must determine the appropriate standard of review to govern our analysis. The parties agree that the Fund's plan is governed by ERISA. See, *Title 29 U.S.C. § 1001 et seq.* In addition, it is well-settled that ERISA preempts State law, unless the Plan involves the purchase of an insurance policy for the provision of Plan benefits. See, *FMC*

*Corp. v. Holliday,* 498 U.S. 52, 64–65, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (invalidating a provision of State law which prohibited the exercise of subrogation rights); *Waller v. Hormel Foods Corp.,* 120 F.3d 138, 139 (8th Cir.1997) ("ERISA preempts any state law that would otherwise override the subrogation provision in a self-insured plan"). In the place of State law, Federal Courts are to develop a body of Federal common law, which would be applicable to ERISA actions. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (Federal Courts may create Federal common law where ERISA is silent).

Although ERISA does not, itself, prescribe the appropriate standard of review for evaluating a benefit determination under an ERISA plan, the Supreme Court, in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), held that "a denial of benefits challenged * * * is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." See also, e.g. *Milone v. Exclusive Healthcare, Inc.,* 244 F.3d 615, 618 (8th Cir.2001); *House v. Paul Revere Life Ins. Co.,* 241 F.3d 1045, 1048 (8th Cir.2001); *McGarrah v. Hartford Life Ins. Co.,* 234 F.3d 1026, 1030 (8th Cir., 2000); *Ravenscraft v. Hy–Vee Employee Ben. Plan and Trust,* 85 F.3d 398, 402 (8th Cir.1996); *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Insurance Co.,* 48 F.3d 365, 371 (8th Cir.1995); *Bounds v. Bell Atlantic Enters., Flexible Long–Term Disability Plan,* 32 F.3d 337, 339 (8th Cir.1994); *Lutheran Medical Center v. Contractors Health and Welfare Plan,* 25 F.3d 616, 620 (8th Cir.1994).

■ Accordingly, when the plan does not vest, in its administrators, the authori-

ty to exercise discretion, "the court undertakes a *de novo* review of the plan's terms and other manifestations of the parties' intent." *Gruenke v. Miles, Inc., Welfare Plan*, 872 F.Supp. 652, 658 (D.Minn.1995); *Whiteside v. Metropolitan Life Ins. Co.*, 798 F.Supp. 1380, 1385 (D.Minn.1992). In contrast, under an abuse of discretion standard, "the plan administrator's plan construction will be upheld, if reasonable." *Buttram v. Cent. States, S.E. & S.W. Areas Health and Welfare Plan*, 76 F.3d 896, 901 (8th Cir.1996); see also *House v. Paul Revere Life Ins. Co.*, supra at 1048 ("Under the abuse-of-discretion standard, we must determine whether a reasonable person could have reached the same decision."); *McGarrah v. Hartford Life Ins. Co.*, supra at 1031. Our Court of Appeals has "variously defined an abuse of discretion as being 'extremely unreasonable,' 'virtually' the same as arbitrary and capricious, and 'extraordinarily imprudent.'" *Shell v. Amalgamated Cotton Garment*, 43 F.3d 364, 366 (8th Cir.1994).

■ In determining whether an interpretation is a reasonable exercise of discretion, the Court is to consider:

 1. Whether the interpretation is consistent with the goals of the Plan;

 2. Whether the interpretation renders any language in the Plan meaningless or internally inconsistent;

 3. Whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute;

 4. Whether the administrators have interpreted the words at issue consistently; and,

 5. Whether the interpretation is contrary to the clear language of the Plan.

*Finley v. Special Agents Mutual Benefit Association, Inc.*, 957 F.2d 617, 621 (8th Cir.1992); see also, *Wald v. Southwestern Bell Customcare Medical Plan*, 83 F.3d 1002, 1007 (8th Cir.1996) (applying *Finley* factors).

As our Court of Appeals has explained, "[t]his highly deferential standard reflects the fact that courts are hesitant to interfere with the administration of a pension plan." *Maune v. IBEW, Local No. 1, Health and Welfare Fund*, 83 F.3d 959, 962–63 (8th Cir.1996), quoting, *Cox v. Mid-America Dairymen, Inc.*, 13 F.3d 272, 274 (8th Cir.1993).

■ The Fund argues that an abuse of discretion standard of review is to be applied when examining its interpretation of the Summary Plan Description which governs its distribution of benefits. In contrast, Meyer relies on *Firestone Tire and Rubber Co v. Bruch*, supra at 111, 109 S.Ct. 948, and asserts that the Fund's fiduciaries are not entitled to deferential review because the Fund's Trust Agreement does not expressly provide them with interpretive authority. Meyer also argues that the Trust Agreement does not clearly and unequivocally give the fiduciaries the discretionary authority to construe doubtful terms in the Trust Agreement. As a consequence, Meyer asserts that the *de novo* standard of review must be applied.

In our considered view, the authority vested in the Fund's Trustees, by the Trust Agreement, is sufficiently broad to confer discretionary authority upon the Trustees. Specifically, the Trust Agreement provides as follows:

 9.2 *Determination of Trustees Binding.* All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Plan or Fund or the operation thereof, whether as to any claim for any benefits preferred by any Participant or any other person, or whether as to the construction of language or meaning of the rules and regulations adopted by the Trustees or this Agreement, or as to any writing, decision, instrument or accounts in con-

nection with the operation of the Plan or Fund or otherwise, shall be submitted to the Trustees and the decision of the Trustees shall be binding upon all persons dealing with the Fund or claiming any benefit thereunder.

*Stipulation of Facts, Ex. D.,* at XI–1.

This provision affords the administrators of the Fund the discretionary authority to determine eligibility for benefits and, for that purpose, to construe the terms of the Trust Agreement. Specifically, because the Trust Agreement provides that **"all questions and controversies * * * as to any claim for benefits * * * shall be** submitted to the Trustees, and that the decision of the Trustees shall be binding," and since the Agreement squarely invests the Trustees with the power to construe the Agreement, and any attendant Regulations, the Fund's administrators plainly have the discretion to construe any uncertain terms, or provisions, in connection with the distribution of benefits. [Emphasis added]. Any other reading would ignore the import of the language entrusting to the administrators the authority to make "binding" determinations as to plan interpretation, and benefit distributions.

■ Our interpretation of this language is consisted with our Court of Appeals' decision, in *Cox v. Mid–America Dairymen, Inc.,* 13 F.3d 272, 274 (8th Cir.1993), where the Court considered a plan provision which was analogous to that at issue here.[4] *Cox v. Mid–America Dairymen,*

*Inc.,* supra at 274; compare with, *Baxter By And Through Baxter v. Lynn,* 886 F.2d 182, 188 (8th Cir.1989) (finding that a provision in the plan giving the fiduciaries the "final authority to determine all matters of eligibility for the payment of claims," did not grant the authority to construe ambiguous terms). Here, however, the Agreement contains "explicit discretion-granting language." *Bounds v. Bell Atlantic Enter. F.L.T.D. Plan,* supra at 339. Indeed, by our count, the Courts, which have closely considered analogous provisions, have uniformly concluded that the same, or very similar language, entrusted the plan administrators with the discretion to construe the language of the Plan, and to render decisions as to an award of benefits under the Plan's provisions. See, e.g., *Russo v. Health, Welfare & Pension Fund,* 984 F.2d 762, 765 (7th Cir.1993); *Bowen v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 961 F.2d 1576, 1992 WL 92832 at *3 (6th Cir., May 6, 1992) [Table Decision]; *Allison v. Dugan,* 951 F.2d 828, 832–33 (7th Cir.1992); *Jan Bliwas, Inc. v. Central States,* 1998 WL 299468 at *5–6 (S.D.Ohio 1998); *Bond v. Trustees of the STA–ILA Pension Fund,* 902 F.Supp. 650, 654 (D.Md.1995); *Livingston v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.Supp. 108, 115 (E.D.Mich. 1995); *Spillers v. Webb,* 979 F.Supp. 494, 497 (S.D.Tex.1997); *McGinnis v. Executive Director of the Central States,* 1991

---

4. The specific language of the plan provision, which was examined in *Cox v. Mid–America Dairymen, Inc.,* 13 F.3d 272, 274 (8th Cir. 1993), was as follows:

§ 6.03. In case of any factual dispute hereunder, the Retirement Committee shall resolve such dispute giving due weight to all evidence available to it. The Retirement Committee shall interpret the Plan and **shall determine all questions** arising in the administration, interpretation and application of the Plan.

The Court, in *Cox,* found this provision to contain, "[p]lan language [which] requires * * * a deferential abuse of discretion standard." *Id.,* citing *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 571 (8th Cir.1992). Moreover, the Court's most recent opinion, upon which Meyer relies, does not hold to the contrary. See, *Walke v. Group Long Term Disability Ins.,* —— F.3d ——, 2001 WL 682731 at *3 (8th Cir., June 19, 2001).

WL 716749 at *3–4 (W.D.Mo., February 23, 1991). We join in that view, and conclude that the abuse of discretion standard of review should be applied in this case, to both the Fund's Plan interpretations, and its fact-based determinations.[5] *Riedl v. General American Life Insurance Co.*, 248 F.3d 753, 756 (8th Cir.2001).

■ 2. *The Fund's Decision to Deny Benefits.* As noted, the policy exclusion, which led to the denial of Meyer's request for benefits, reads as follows:

## EXCLUSIONS AND LIMITATIONS

Payment will not be made under any health benefit or Weekly Income Benefit of the Plan for the following:

2. Charges incurred in connection with:

\* \* \* \* \* \*

c. Any Accidental Injury or Sickness **which would be covered** under Workers' Compensation, or similar law, regardless of whether or not such insurance was in force and effect at the time of injury.

*Stipulation of Facts, Ex. C.*, at 41.

Specifically, with respect to whether Minnesota law afforded Meyer coverage under the Workers' Compensation Act, Minnesota Statutes Section 176.041, Subdivisions 1, and 1a, provide, in pertinent part, as follows:

Subdivision 1. Employments excluded. This chapter does not apply to any of the following:

\* \* \* \* \* \*

(d) a sole proprietor, or the spouse, parent, and child, regardless of age, of a sole proprietor;

\* \* \* \* \* \*

(k) a person whose employment at the time of the injury is casual and not in the usual course of the trade, business, profession, or occupation of the employer;

\* \* \* \* \* \*

Subdivision 1a. Election of coverage. The persons, partnerships, limited liability companies, and corporations described in this subdivision may elect to provide the insurance coverage required by this chapter.

\* \* \* \* \* \*

(f) \* \* \* The persons, partnerships, limited liability companies, and corporations described in this subdivision may also elect coverage for an employee who is a spouse, parent, or child, regardless of age, of an owner, partner, manager, or executive officer, who is eligible for coverage under this subdivision. Coverage may be elected for a spouse, parent, or child whether or not coverage is elected for the related owner, partner, manager, or executive director and

5. Meyer also argues that, because the Fund's determination was on a question of law, it is not entitled to a deferential standard of review. See, *Penn v. Howe–Baker Engineers, Inc.*, 898 F.2d 1096, 1100 (5th Cir. 1990)(Court gave no deference to administrator's conclusions as to the controlling law); *Weil v. Retirement Plan Administrative Committee of the Terson Co., Inc.*, 913 F.2d 1045 (2nd Cir.1990) (de novo standard of review applied to administrator's decision when decision turned on interpretation of the Internal Revenue Code). Here, the Fund's decision to deny benefits was based upon its construction of Minnesota's Workers' Compensation Act, and its finding that such coverage was available to Meyer, by his wife's election to secure that coverage, and we review that decision to determine its compliance with the applicable Minnesota Workers' Compensation laws *de novo*. *Herrmann v. E.W. Wylie Corp.*, 766 F.Supp. 800, 802 (D.N.D.1991). Simply stated, in the interests of justice, we could not defer to what we would regard as an erroneous interpretation of a controlling principle of law.

whether or not the person, partnership, limited liability company, or corporation employs any other person to perform a service for hire. Any person for whom coverage is elected pursuant to this subdivision shall be included within the meaning of the term employee for the purposes of this chapter.

According to the Fund, its decision to deny Meyer's claim for benefits was based upon the language of Subdivision 1a(f), which provides that coverage may be elected for a spouse of a business owner, whether or not coverage is elected for the related owner, and whether or not the owner employs any other person to perform a service for hire. The Fund argues that, because this Subdivision would have allowed Meyer's wife to secure coverage for Meyer, as a "spouse," his injury "would be covered" under Minnesota's Workers' Compensation law, had Meyer's wife made that election.

In contrast, Meyer argues that the Fund's decision to deny his claim for benefits was unreasonable because, as the spouse of a sole proprietor, he was excluded from coverage under the plain language of Section 176.041, Subdivision 1(d). According to Meyer, under Subdivision 1a(f), his wife "could" have obtained coverage for him. Meyer argues however, that, because the Fund's exclusion language only allows for the denial of coverage when an injury "would" be covered under Workers' Compensation law, and does not provide for the denial of coverage when an injury "could" be covered under Workers' Compensation law, the Fund's decision violated the explicit language of the exclusion provision on which the Fund relies. According to Meyer, since "would" is mandatory, and "could" is permissive, Meyer's benefit claim should not have been rejected unless he was required, under Minnesota law, to secure coverage for his work at his wife's business.

As a fall-back argument, Meyer urges that his work for his wife was casual employment, which was not performed in the usual course of his wife's trade and, therefore, was excepted from coverage, under Minnesota's Workers' Compensation Act, by Minnesota Statutes Section 176.041, Subdivision 1(k), which we have quoted above. We are persuaded by neither of Meyer's arguments, and find that he would have been covered, under the Workers' Compensation Act of Minnesota, for his work at his wife's business, had his wife elected such coverage.

First, we find no merit in Meyer's semantical argument. The Plan's exclusion plainly means that an injury, which would be covered under Workers' Compensation, if a Workers' Compensation policy were in force and effect at the time of the injury, is ineligible for benefit payments from the Fund. Undoubtedly, other words, or phrases, could have been employed to convey that same plain meaning, but our function is not to determine whether the language employed is the best, or clearest language, but whether the meaning, drawn by the Plan administrators from that language, is reasonable. See, *Bremer v. Hartford Life and Accident Insur. Co.*, 16 F.Supp.2d 1057, 1060 (D.Minn.1997) ("[T]he court will uphold the administrator's determination if it is reasonable, regardless of whether it is the best interpretation possible.").

■ As the Court explained, in *Cash v. Wal–Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir.1997), "[t]he Committee's decision will be deemed reasonable if 'a reasonable person **could** have reached a similar decision, given the evidence before him, not that a reasonable person **would** have reached that decision.' " [Emphasis in original]. As the foregoing quotation reflects, on occasion, the term "could" can have a different meaning than "would," but we do not see the substitution of "could,"

for "would," which Meyer accuses the Fund of doing by its construction, to have substantive import, even if it occurred. Given the context, "could" and "would" may be used interchangeably. For example, we can find no meaningful distinction between saying that "the jar could hold eight ounces of fluid," or saying that "the jar would hold eight ounces of fluid." The interpretation of the Plan exclusion, while, perhaps, not the only reasonable construction, remains a reasonable one, here, given the Record presented.

As we have previously noted, "[i]n determining whether a committee's interpretation of a plan is reasonable, this circuit utilizes the five-factor test outlined in *Finley v. Special Agents Mut. Benefit Ass'n * * *." Cash v. Wal–Mart Group Health Plan,* supra at 641. Plainly, the Fund's interpretation is consistent with the goals of the Plan, as the Fund has a finite set of financial resources to be used for the collective good of its members, and allowing Plan assets to be depleted, in order to pay benefits which would have been payable from an unrelated source of funds, would not advance that aspiration of

the Plan.[6] On the other hand, if benefits were not available from a commonly available collateral source—in this instance, a Workers' Compensation insurer—then the assets of the Plan would be available to compensate the injured Plan participant.

We are not aware of any Plan language that would be rendered meaningless, or internally inconsistent by the Fund's interpretation, nor are we aware of any provisions of ERISA which would be contravened by the Fund's construction of the exclusion in dispute. In our considered view, the Fund's interpretation does not conflict with the clear language of the Plan, nor are we advised that the interpretation is contrary to the Fund's prior construction of the same, or similar, terminology. Of course, in conducting this evaluation, we do not substitute our own weighing of the evidence for that of the Plan administrators, nor do we reject an interpretation merely because we do not agree with the result that such a construction prompts. See, *Bolling v. Eli Lilly & Co.,* 990 F.2d 1028, 1029 (8th Cir.1993); *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 572 (8th Cir.1992). Notably,

---

**6.** Under ERISA, a plan administrator must discharge its fiduciary "duties with respect to a plan solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries." *Title 29 U.S.C. § 1104(a)(1).* As our Court of Appeals has clarified, "[f]iduciary obligations extend primarily to the plan as it relates to all beneficiaries, not just to individual claimants." *Barnhart v. UNUM Life Ins. Co.,* 179 F.3d 583, 589 (8th Cir.1999), citing *Massachusetts Mutual Life Ins. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), for the proposition "that the fiduciary duty of ERISA provisions are primarily concerned with protecting the integrity of the plan, which in turn protects all beneficiaries." [Emphasis in original]. Obviously, there are unavoidable tensions in addressing the needs of the Plan, and individual claimants. In the words of the Third Circuit:

In *Adams v. New Jersey Brewery Employees' Pension Trust Fund,* 670 F.2d 387 (3d Cir. 1982), we recognized the sometimes conflicting obligations of the trustees to preserve the financial security of a pension fund and yet apply the assets to the greatest possible advantage for the beneficiaries. At times, restricting the amounts paid to some may be necessary to prevent loss to others. Partly because of these competing interests, trustees are given broad discretion to act, and we reverse their actions only if they are arbitrary and capricious.

*Geib v. New York State Teamsters Conference Pension and Retirement Fund,* 758 F.2d 973, 978 (3rd Cir.1985).

We find nothing unreasonable in the Fund's effort to conserve its assets as contemplated by the exclusion that is here at issue.

Meyer does not demonstrate that the Fund's interpretation is unreasonable, or not supported by the substantial evidence of Record when considered as a whole, but merely contends that the Fund's construction is wrong. For the reasons stated, we disagree.

 The issue devolves, therefore, to a determination of whether Meyer would have been covered by Workers' Compensation, had a policy been obtained on his behalf. To answer this question, we turn to the laws of Minnesota and, specifically, the provisions of Minnesota Statutes Section 176.041, Subdivision 1a(f), which allow the owner of a business—here Meyer's wife—to elect coverage, under Minnesota's Workers' Compensation Act, for Meyer. According to the stipulated Record before us, Meyer's wife made no such election.

We understand Meyer to argue that, notwithstanding his wife's election to forego Workers' Compensation coverage for his benefit, such an election would have provided him with no protection, as he was a "person whose employment at the time of the injury [was] casual and not in the usual course of the trade, business, profession, or occupation of the employer" and that, therefore, he would have remained excluded from the coverage of Minnesota's Workers Compensation Act by virtue of Minnesota Statutes Section 176.041, Subdivision 1(k). While the issue is not free from doubt, and has not been fully illuminated by the Minnesota Courts, we find Meyer's argument to be unconvincing. We accept, as Meyer urges, and as Section 176.041 makes plain, that various workers are excluded from the coverage of Minnesota's Workers' Compensation Act, including spouses of business owners, and persons engaged in casual employment, whose work, at the time of their injury, was not in the usual course of the trade, business, profession, or occupation, of the employer.

 We are also mindful of Meyer's effort, and it is a considerable one, to qualify Meyer, at the time of his injury, as such a casual employee. Nevertheless, we find the argument precluded by the provisions of Subdivision 1a(f). While not a paradigm of clarity, on this Record, we construe that Subdivision as extending Workers Compensation coverage to the spouses of business owners, notwithstanding that they may be engaged, at the time of their injury, in casual employment which is not in the usual course of the business of the employer. In part, Subdivision 1a(f) provides as follows:

The persons, partnerships, limited liability companies, and corporations described in this subdivision may also elect coverage for an employee who is a spouse, parent, or child, regardless of age, of an owner, partner, manager, or executive officer, who is eligible for coverage under this subdivision.

A plain reading of this provision would imply that, to be covered as a spouse of a business owner, the worker must otherwise be eligible for coverage under the Workers' Compensation Act. If the Subdivision ended at this point, we would agree with Meyer, that electing coverage would provide no protection, under the Act, to those spouses who were not otherwise eligible for Workers' Compensation coverage—say, for example—because that spouse was excluded from coverage as a "casual employee."

Subdivision 1a(f) continues, however, to provide as follows:

Coverage may be elected for a spouse, parent, or child whether or not coverage is elected for the related owner, partner, manager, or executive director and whether or not the person, partnership, limited liability company, or corporation employs any other person to perform a service for hire. **Any person for whom coverage is elected pursuant to this**

**subdivision shall be included within the meaning of the term employee for the purposes of this chapter.**

[Emphasis added].

Upon a facial reading, there appears to be an internal conflict, within Subdivision 1a, for the latter provision, which we have just quoted, extends the status of an "employee," under the Workers' Compensation Act, to "any person" for whom coverage is elected under Subdivision 1a(f)—inclusive of a spouse of an owner, or an "independent contractor"—that is, persons who, under Subdivision 1, would not otherwise be eligible for coverage under the Subdivision, absent the election allowed by Subdivision 1a(f).

In concluding that the extension of "employee" status, within the Minnesota Workers' Compensation Act, to spouses of owners who have elected to obtain Workers Compensation insurance, trumps any requirement that the "employee" be otherwise eligible for coverage, we construe the ostensibly conflicting provisions to allow each to have force and effect. We construe the phrase "who is eligible for coverage under this subdivision," to have specific reference to Subdivision 1a. Accordingly, if a person is eligible for coverage under Subdivision 1a—for example, the person engages in work for a spouse who owns the business—then the owner's election of coverage for that spouse envelopes him or her within the meaning of an "employee," without reference to the type of work in which the worker-spouse is engaged at the time of his or her injury.

■ As the Court observed, in *Hallas v. Naegele Outdoor Advertising, Inc.*, 541 N.W.2d 594, 597 (Minn.App.1995), rev. denied (Minn., February 9, 1995), "the pur-

pose of the election provision [i.e., Minnesota Statutes Section 176.041, Subdivision 1a(f)] is to allow more workers to be brought within the scope of the Act." We find nothing substantively different from allowing a business owner to elect coverage for independent contractors, who are clearly not "employees," and allowing the same business owner to secure Workers' Compensation coverage for his or her spouse who works, for whatever reason, in the owner's business.

Moreover, our construction effectuates the presumption that, in ascertaining legislative intent, we allow the entire content of Subdivision 1a(f) to be "effective and certain." *Minnesota Statutes Section 645.17(2)*. We also give effect to the presumption that the Minnesota Legislature did not "intend a result that is absurd, impossible of execution or unreasonable," *Minnesota Statutes Section 645.17(1)*, for it would make no sense to extend coverage to a worker-spouse, as an "employee" under the Workers' Compensation Act, only to sculpt out the Act's protection on the basis that the owner-spouse asked the worker-spouse to do a casual, and out-of-the usual-course-of-business, work task. Lastly, our interpretation of Subdivision 1a finds some independent corroboration in Record, as the Workers' Compensation insurer of the business that Meyer's wife owned, denied coverage because, on the information the insurer possessed, Meyer's wife had not elected coverage for him, and Meyer was not an "employee of Bill's Café." As we read the applicable law, both disqualifying factors would be rectified by an election under Subdivision 1a, for electing coverage for Meyer would have qualified him as an "employee" under the Act.[7]

---

**7.** Were we to interpret Subdivision 1a differently, we would be caused to deny Summary Judgment to either party, as the evidence before us, which relates to Meyer's past involvement in other work duties at his wife's business, is scant. By way of examples, we have no information as to: (1) whether Meyer routinely performed such services for his wife; (2) whether measuring the side of the

We do not overlook the unfortunate consequence that arises from the election not to include Meyer under the umbrella of the Minnesota Workers' Compensation law. Seldom are these types of ERISA claims removed from the hard realities of life, including the truth that an election, once perceived to be trivial, can ultimately have tragic repercussions. This would appear to be such a case. We are not empowered, however, to substitute our inclinations, as to how such misfortune can be cured, when the facts, and the governing law, constrain our free hand. Here, we conclude that the Fund exercised a reasonable judgment in declining Meyer's application for benefits, "and that decision 'should not be disturbed even if another reasonable, but different, interpretation may be made.'" *Fletcher–Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1180 (8th Cir.2001) [no page references available], quoting *Donaho v. FMC Corp.*, supra at 899, quoting in turn, *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 279 (7th Cir.1994).

In sum, finding that the Fund is entitled to Judgment as a matter of law, we grant the Fund's Motion for Summary Judgment, and we deny Meyer's Cross–Motion for Summary Judgment.

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff Jerald Meyer's Motion for Summary Judgment [Docket No. 10] is DENIED.

2. That the Defendant Duluth Building Trades Welfare Fund's Motion for Summary Judgment [Docket No. 12] is DENIED.

restaurant was part of an overall effort to prepare the business for operation, or was part of the routine maintenance of the business; (3) whether Meyer was expected to perform other tasks in order to render the restaurant more attractive; (4) the importance of Meyer's employment, or (5) the duration of Meyer's employment.

Whether particular work is either casual, and/or within the usual scope of the business, are highly fact-dependent. Of the two qualifications, the latter is the more determinative as, on some occasions, the painting of trim, on an apartment building, has been found to be within the course of the business of renting such a building to a lessee, because the appearance of the building could enhance its attractiveness for renting purposes. See, *Berard v. LaCoe*, 286 Minn. 375, 176 N.W.2d 74 (1970) (finding an apparent casual employee to be covered under the Workers' Compensation Act). On this Record, we could not hazard a guess whether, in the context of a restaurant, work incident to rendering the exterior of the business more appealing to the consuming public would necessarily fall within the usual course of that restaurant's business, as was the case in *Berard*. To render that determination, further facts would be required for an informed judgment.